## THE PERKIOMEN.[1]

## THE ABBIE C. STUBBS.

(*District Court, D. Massachusetts.* May 3, 1886.)

COLLISION—STEAMER AND SAILING VESSEL—FOGGY WEATHER—REVISED INTERNATIONAL REGULATIONS—SAILING RULES, ART. 12, CONSIDERED AND CONSTRUED.

The schooner A., while running close to the edge of a fog-bank, came into collision with the steamer P. In the immediate vicinity of the schooner, and inshore from her, the atmosphere was clear; but offshore, and over the track of the steamer, there hung a low mist or fog, the effect of which was to shut out entirely from each vessel the side lights of the other until too late to prevent a collision. The mast-head light of the steamer was visible from the schooner's deck for at least 20 minutes prior to the collision. Neither vessel gave the fog-signal prescribed by the sailing rules. *Held*, that a vessel is under obligation to observe the rule, not only when she is actually enveloped in a fog, but also when she is so near it that it is necessary that her position should be known to any vessel that may happen to be within it. As neither vessel complied with this rule, they must both be held liable for the consequences of the collision.

Cross-libels for a Collision between the steam-ship Perkiomen and the schooner Abbie C. Stubbs.

*R. Stone*, for the Perkiomen.

*W. W. Dodge*, for the Abbie C. Stubbs.

NELSON, J. There is very little disagreement between the parties as to the material and controlling facts in this case. They are, briefly, these: The collision happened about midnight between the fifteenth and sixteenth of July, 1885, near the whistling-buoy, five miles off Monomoy beach. The Perkiomen, a large steam-collier belonging to the Reading Railroad, was on a voyage from Port Richmond to Boston, with a full cargo of 1232 tons of coal. She had passed through Pollock Rip slue, and had just got by the whistling-buoy on her starboard side, and was heading N. by E., with a speed of 7 knots an hour. The schooner Abbie C. Stubbs, of 328 tons, was on a voyage from Boston to New Bedford, with a part cargo of pyrites. She was close-hauled on the starboard tack, steering S., with the wind S. W. by W., and light, and her speed was four knots. In the immediate vicinity of the schooner, and inshore from her, the atmosphere was clear, and Chatham, Monomoy, and Shovelful lights could be seen distinctly; but offshore to the southward, extending over the shoals and the track of the steamer, there hung a low fog or mist, which shut out from the schooner Pollock Rip light and the side lights of the steamer, and also shut out from the steamer the side lights of the schooner. But the fog did not rise so high above the water as to shut out from the schooner the steamer's mast-head light. That was clearly visible from the schooner's deck,

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

and was observed and watched by her master and mate, a point or two over the starboard bow, for 20 minutes before the collision. The course of the schooner was close to the edge of the fog-bank. As the steamer emerged from the fog, she then for the first time became aware of the vicinity of the schooner by seeing her green light over the port bow. Her wheel was then put hard a-port as soon as possible, and she swung off to starboard; but it was too late. The schooner, continuing her course, struck the steamer, head on, amidships, on the port side, cutting into her hull to such a length that she soon filled and sunk, her men escaping in the boats. The schooner also was so badly damaged about the stem that she was beached to save her from sinking. Neither vessel, at any time before the collision, gave the fog signal prescribed by the sailing regulations.

By article 12 of the Revised International Regulations, adopted by the act of March 3, 1885, (23 St. 438,) when under way in fog, mist, or falling snow, whether by day or night, a steamship is required to make, with her steam-whistle, or other steam sound signal, at intervals of not more than two minutes, a prolonged blast; and a sailing vessel to make with her fog-horn, at like intervals, when on the starboard tack one blast, when on the port tack two blasts in succession, and when with wind abaft the beam three blasts in succession.

As neither vessel complied with this rule, they must both be held liable for the consequences of the collision. The liability of the steamer was admitted at the hearing. The schooner does not admit hers, but it seems to be equally clear.

A vessel is under obligation to observe the rule, not only when she is actually enveloped in fog, but also when she is so near it that it is necessary that her position should be known to any vessel that may happen to be within it. The master of the schooner was aware of the fog to the southward from the fact that Pollock Rip light was obscured. His excuse is that he mistook the steamer's mast-head light for the light of a vessel at anchor on the shoals. That certainly is not a good excuse. The bright mast-head light was a clear indication that a steamer was approaching with her side lights obscured by fog. It seems incredible that a vigilant and skillful officer could mistake the bright mast-head light of a steamer, nearing him at the rate of 11 knots an hour, for the stationary light of a vessel at anchor, several miles away. Capt. Lewis, her master, admits that he was just approaching the fog-bank when the light was reported, and thought the light might be the mast-head light of a steamer coming north, and that he kept off a point to give his vessel more freedom of action in case his suspicion should be confirmed. This admission is fatal to the schooner's case, as it places her in a situation in relation to the steamer where it was her clear duty to sound her fog-horn.

Both vessels being found to blame, a decree is to be entered for the libelants in each case, the damages to be divided. Ordered accordingly.