## THE WILLIAM H. TAYLOR.*

### (Circuit Court of Appeals, Second Circuit. January 18, 1922.)

### No. 104.

1. **Collision ⊕81—Both vessels held at fault for failing to sound fog signals.**

   Both tugs, which collided shortly after one of them had emerged from a bank of vapor caused by the intense cold and which had completely hidden the tug, *held* at fault for failure to sound the fog signals required by Inland Rules, art. 15 (Comp. St. § 7888).

2. **Collision ⊕81—Rule requiring fog signals is imperative.**

   Inland Rules, art. 15 (Comp. St. § 7888), requiring signals to be sounded in fogs, is imperative, and omission to sound the signals is a positive breach of the statute, which puts the vessel omitting them in the wrong.

3. **Collision ⊕82(2)—Speed through vapor bank held excessive.**

   A tug, which passed through a bank of vapor caused by the intense cold, and which was thick enough to conceal her from view, without reducing from full speed, *held* at fault for a collision resulting shortly after she emerged from the bank.

4. **Collision ⊕82(2)—Vessel in fog must be able to stop within seeing distance.**

   A vessel passing through a bank of vapor is bound to maintain such a rate of speed as would enable her to come to a standstill by reversing her engines at full speed before she would collide with a vessel which she could not see through the vapor.

5. **Collision ⊕81—Vessel outside vapor bank must sound fog signals.**

   A tug, which was navigating just outside a bank of vapor sufficiently high and dense to conceal from view a vessel which might be in the bank, should have sounded fog signals to warn any vessels in the bank of her presence.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Standard Oil Company of New York against the steam tug William H. Taylor, of which the Morris & Cumings Dredging Company was claimant. From a decree awarding half damages to the libelant, both the libelant and claimant appeal. Affirmed.

Duncan & Mount, of New York City (O. D. Duncan, Warner C. Pyne, and T. J. Healy, all of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark and J. Harvey Turnure, both of New York City, of counsel), for the Taylor.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. This libel was brought by the libelant against the tug William H. Taylor to recover damages sustained by the libelant's tug No. 15 on the morning of December 31, 1917, resulting from a collision between the No. 15 and the tug Taylor. Both vessels were held at fault, and a decree was entered for half damages against the No. 15.

On this morning, the Taylor left Pier B, Jersey City, bound for the slip between Piers 1 and 2, Hoboken. The weather was extremely

cold, with a north wind, and the tide was flood. The temperature varied from 2 to 7 degrees below zero. This caused a phenomenon of a bank of vapor on the surface of the water due to the intense cold. At times it became so thick and high above the water that craft was obscured in the vapor. The Taylor had proceeded up the river and reached a point about 500 feet off the Jersey piers and slowed down off Pier 4, and then starboarded her helm in order to enter her slip between Piers 1 and 2. When the Taylor arrived about 200 feet off the pier, she stopped her engine, keeping sufficient way to enter the slip. While about at this point, the No. 15 came out of a bank of vapor off Pier 1, bound down stream close to the piers, with a barge on her starboard side. The No. 15, with a barge light, left Forty-Eighth street, Manhattan, bound for North Tenth street, Brooklyn. For about the first 20 minutes of her voyage, she headed down and across the Hudson river toward Weehawken to proceed along the Jersey shore, in order to keep clear of ice in the river on the New York side. She was hooked up, making her ordinary crossing speed with her tow of about 6 miles.

When the tug was off Seventh street, Hoboken, her course was altered toward the Jersey piers to pass another tow. Just how far she was off the piers is disputed, but is not important. When the presence of the No. 15 was made known to the Taylor, she immediately put her engines full speed astern. The No. 15 rang her engines full speed ahead, and put her helm to port, causing her stern to swing against the Taylor's stem, resulting in damages to the No. 15 and causing her to sink in a few minutes. The Taylor was not damaged. No fog signals were sounded by either vessel. The No. 15 sounded one-blast passing signal a few seconds before the collision. She carried no lookout and was in charge of a mate. That vapor existed to the degree claimed by the Taylor is disputed. We are satisfied that at times and spots the vapor was higher than the tug's smokestack, and in other places it was clear. We are fully satisfied that the vapor did envelop and hide the No. 15 while she was passing through the bank, and we are further satisfied that the No. 15 was obscured for about 80 feet off on the Taylor's starboard bow, which resulted in her looming out of this bank of vapor off the end of Pier 1, upon the Taylor.

[1] Under these circumstances, we think the No. 15 was at fault for failing to sound fog signals. Article 15 of the Inland Rules provides:

"In fog, mist, falling snow, or heavy rainstorms, whether by day or night, the signals described in this article shall be used as follows, namely: Steam vessel under way. (a) A steam vessel under way should sound, at intervals of not more than one minute, a prolonged blast." Comp. St. § 7888.

The object and purpose of this rule is to make known the vessel's position in the fog or bank because of the obscured vision. We agree with the District Judge in his conclusion that it was just as needful to blow a signal when the vessel was enveloped in a bank of vapor due to intense cold as would be the case when enveloped in a fog.

[2] The rule is imperative and must be observed, and omission to blow signals on the part of a vessel has long been considered a posi-

tive breach of the statute, which puts her in wrong. Martello, 153 U. S. 64, 14 Sup. Ct. 723, 38 L. Ed. 637; The Pennsylvania, 19 Wall. 125, 22 L. Ed. 148; Baltimore Steampacket Co. v. Coastwise Transp. Co. (D. C.) 139 Fed. 777; Richelieu Nav. Co. v. Boston Marine Co., 136 U. S. 408, 10 Sup. Ct. 934, 34 L. Ed. 398; Yang-Tsze Ins. Ass'n v. Furness Withy & Co., 215 Fed. 859, 132 C. C. A. 201. No whistle was blown by the No. 15 until she was in the jaws of collision. The probability of the phenomenon of a bank of vapor so large and dense as to hide a vessel and to require signals was recognized in the Belfast (D. C.) 226 Fed. 362.

[3, 4] We think, also, that the No. 15 was going at an excessive speed, and was at fault for failing to stop when passing through this bank of vapor. She was bound to observe this unusual condition, and to maintain such a rate of speed as would enable her to come to a standstill, by reversing her engines at full speed before she would collide with the vessel which she could not see through the vapor. The Nacoochee, 137 U. S. 330, 11 Sup. Ct. 122, 34 L. Ed. 687; The Umbria, 166 U. S. 404, 17 Sup. Ct. 610, 41 L. Ed. 1053.

[5] The Taylor is likewise charged with knowledge of the weather conditions and the bank of vapor. Her opportunity to observe these conditions was as good as the No. 15. She was proceeding between 9 and 10 knots, and blew no fog signals. She had altered her course when about 5 feet off the pier ends to make the slip, and in close proximity to the bank of vapor, which she claims obscured her view of the No. 15. The Taylor was under obligation to observe the fog rule, not only when she was actually enveloped in fog or vapor, but also when she was so near to it that it was necessary that her position should be made known to any other vessel which might by chance be enveloped in the fog or vapor. Care and caution required that each vessel exercise ordinary prudence and have regard for the possibility of the vessel being so hidden. We think the court below properly held both vessels at fault.

Decree affirmed.