The **EDWARD E. LOOMIS.**

In re GREAT LAKES TRANSIT CORPORATION.

No. 76.

Circuit Court of Appeals, Second Circuit.

Dec. 14, 1936.

See, also, Algoma Central & Hudson Bay Ry. Co. v. Great Lakes Transit Co., 86 F.(2d) 708.

Duncan, Leckie, McCreary, Schlitz & Hinslea, of Cleveland, Ohio (Thos. H. Garry, F. L. Leckie and Lee C. Hinslea, all of Cleveland, Ohio, of counsel), for appellant owner of The Franz.

Robinson & Bleecker, of Cleveland, Ohio (Theodore C. Robinson, of Cleveland, Ohio, of counsel), for appellants Angus M. MacInnes et al.

Brown, Ely & Richards, of Buffalo, N. Y. (John B. Richards and Laurence E. Coffey, both of Buffalo, N. Y., of counsel), for petitioner-appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This litigation arises from a collision on Lake Huron, about 3.30 a. m., November 21, 1934, between the steamers Edward E. Loomis and W. C. Franz, which resulted in damage to the former and the total loss of the latter. Four members of the crew of the Franz were drowned and others suffered injury and loss of personal effects. After the owner of the Franz had filed a libel in personam against the owner of the Loomis, the latter instituted the present proceeding for limitation of liability. The trial resulted in a decree exonerating the petitioner. The claimants have appealed.

On the morning of November 21, 1934, the Loomis, laden with cargo, was bound down Lake Huron; the Franz, without cargo, was upbound. Each vessel was proceeding at a speed of 12 miles an hour. Conditions of visibility were such that they did not sight each other's lights until about half a mile apart. At about 3.15 a. m. the navigators of the Loomis observed smoke on her starboard bow which indicated the presence of a boat or boats ahead. Subsequently she picked up the green light of the steamer Soreldoc which was proceeding up the lake at about 10 miles per hour and was a short distance ahead of the Franz. The Loomis blew a two-blast signal to the Soreldoc and headed to her left half a point; the Soreldoc without answering the signal, headed twenty-five degrees to her left. They passed starboard to starboard about a quarter of a mile apart. Before the Loomis was quite abreast of the Soreldoc, she picked up the range lights and green light of the Franz and a two-blast signal was blown to her. This signal was not answered by the Franz, which claims she did not hear it. There is great conflict in the testimony as to the relative positions of the vessels when the Loomis first sighted the Franz. We shall accept the findings of the trial judge who heard the witnesses and whose conclusions must control when, as here, certainty of error in them cannot be established. U. S. Mexican Oil Corp. v. Pennsylvania R. Co., 20 F.(2d) 385, 386

(C.C.A.2); The No. 1 of New York, 61 F.(2d) 783, 785 (C.C.A.2). He rejected the contention of the Franz that the vessels were either on crossing courses or were so nearly head and head as to require a port to port passing. He found that the vessels were about half a mile apart when the Loomis blew her two-blast signal; that the Franz was nearly behind the Soreldoc, and had changed her heading half a point to the right of her original course in order to pass to the right of her; that the Franz was about one-quarter of a mile to the westward of the course of the Loomis projected forward and that, had both vessels maintained their courses, they would have passed safely starboard to starboard at least 800 feet apart. On sighting the Loomis the Franz put her rudder hard right; and half a minute after she was first sighted by the Loomis her green light was shut out and she was seen to be turning directly across the bow of the Loomis. The latter immediately blew a danger signal and two blasts, and altered her course to her left. The steamers were then from 1,200 to 1,600 feet apart, and each was advancing at the rate of 12 miles an hour. When the Franz was seen to be continuing on her course, the Loomis put her engines in reverse and her rudder hard left, but the maneuver was ineffectual. No signals were blown by the Franz except an alarm at the moment of collision. The bow of the Loomis struck the port side of the Franz just aft of the collision bulkhead and at an angle of about forty-five degrees.

The trial judge found that the Franz was "grossly mismanaged and negligently maneuvered." She either deliberately maintained her course to starboard or was unable to straighten up because of the jamming of her steering gear, of which there was some evidence. No one now contends that she was not at fault. The only issue is whether the Loomis should not be held for contributory faults on the facts as found by the district judge.

The place of collision was found to be within the space referred to as the "safety zone" which lies between the upbound and downbound courses recommended by the Lake Carriers Association and the Dominion Marine Association. These courses have been accorded such general recognition that they appear on the official charts of Lake Huron. The captain of the Loomis admitted that he had orders not to lay a course within the safety zone and that he disobeyed them. It is urged by the appellants that this is sufficient to charge the Loomis with contributory fault. The Loomis answers that these courses have not been established by governmental authority, and so it was no fault to depart from them. Departure, it is true, is not a statutory fault; but, where ship owners agree that mutual safety requires ships to follow stated courses, and these are recognized to the extent that they even appear on the official maps, the courts should hold that it is negligent navigation to leave them without reason. The very purpose of establishing upbound and downbound courses is to avoid the dangers incident to an unexpected meeting under conditions of poor visibility. There was testimony to the effect that upbound vessels and some 50 per cent. of downbound vessels sometimes failed, as did the Loomis, Franz, and Soreldoc on this occasion, to keep to these charted lanes; but it is of course no excuse to the Loomis that other navigators are also negligent. The trial judge found that each boat was at fault in laying her course within the neutral zone under the conditions obtaining on the night in question, but said it was not "a legal fault." If by this it was meant that it was not a statutory fault, we agree, but think it immaterial; if it was meant as a statement that the fault did not contribute to the collision, the conclusion is not so clear. It is true that unlawful position does not per se necessarily result in liability, as it may be a so-called condition rather than a contributing cause of the collision. The Perseverance, 63 F.(2d) 788 (C.C.A.2); The Bellhaven, 72 F.(2d) 206 (C.C.A.2). But such cases do not govern where the sudden appearance of the offending vessel would be likely to, and does, produce confusion on the part of the navigators of the other. Southern Pac. Co. v. United States, 72 F.(2d) 212, 214 (C.C.A.2). But we need not decide whether this fault of the Loomis should be held to be a contributing cause, since she must be held for statutory faults as to which the burden is upon her to show that they could not have contributed.

It is contended that the Loomis was also at fault in not blowing fog signals, in proceeding at immoderate speed, in pressing on at full speed without having gotten an answer to her two-blast signal, and in having her lookout improperly stationed

in the pilot house instead of at the bow. The trial judge found that the conditions of visibility were "far worse than the witnesses from either vessel were willing to admit"—so bad, indeed, that the boats did not make out each other's lights until they were only half a mile apart, and, as we understand it, could not have done so earlier. That the obscurity was due to smoke from the upbound vessels seems most unlikely, for the southeasterly wind would blow the smoke over the left bows of the Soreldoc and the Franz, and, by hypothesis, the Loomis was on their right bows. But whether the obscurity was due to smoke or some other cause is immaterial, for the rules of navigation applicable to fog apply to "thick weather" from whatever cause. 33 U.S.C.A. §§ 271, 272; The Ping-On v. Blethen, 11 F. 607 (C.C. Cal.); The Archey Crossman and The Gracie (D.C.) 106 F. 984, affirmed Id., 106 F. 985 (C.C.A.2); The Rona—The Ava, 2 Asp.Mar.Cas.(N.S.) 182. And a vessel which may herself be in the clear is not excused from observance of the rules when skirting or approaching a patch of haze from which an obscured vessel may suddenly emerge. The Papoose, 85 F.(2d) 54 (C.C.A.2), cert. denied December 7, 1936 (57 S.Ct. 230, 81 L.Ed. ——). The William H. Taylor, 278 F. 717 (C.C. A.2); The Martin Mullen, 260 F. 916 (C.C.A.6). We accept the finding that, although the Loomis could see the smoke of the upbound Soreldoc and Franz for a distance of several miles, the atmosphere near the place of meeting was so thick that she could not discern their lights until about half a mile away. To approach to within this distance at 12 miles an hour and without sounding fog signals was a violation of the rules. The Franz was also making 12 miles an hour, so that they were only 75 seconds apart when they could first see each other, a time too short for either to stop. The District Judge excused the Loomis on the ground that fog signals would have been in vain, since the Loomis was "hearing nothing," and that failure to reduce speed had no bearing on the collision, since the vessels would have passed clear, had not the Franz unforeseeably thrown herself across the Loomis' course. With these conclusions we cannot agree. To escape responsibility for a statutory fault, the offending vessel must prove not only that it probably did not contribute to cause the collision, but that it could not have contributed.

The Papoose, supra. This the Loomis has failed to do. No one can be certain that her fog signals would not have been heard and heeded, though her passing signal was not. No one can say that, had she checked her speed before getting into such close quarters, she would have found it necessary to press on after the Franz was seen to be undertaking to cross her bow. At a slower speed she might have been able to avoid the collision altogether, or at least to have so softened the blow as to do little damage.

For the faults above discussed, and without considering the charges that she should have waited for an answering signal from the Franz, or that her lookout was improperly stationed, we think the Loomis must be held jointly liable with the Franz. Though not entitled to exoneration, the petitioner is entitled to limitation of liability, as the faults of the Loomis were faults of navigation and without the privity of her owner. The decree must be modified in accordance with this opinion. It is so ordered.