### UNITED STATES v. THE WAIPAWA.

### THE GEORGE N. SEGER.

### KINGDOM OF BELGIUM v. THE WAIPAWA et al.

### SHAW, SAVILL & ALBION CO., Limited, v. UNITED STATES.

United States District Court
S. D. New York.

Dec. 20, 1948.

John F. X. McGohey, U.S.Atty., of New York City (Max Taylor and Herbert E. Ost, Asst. U. S. Attys., both of New York City, of counsel), for the United States.

Burlingham, Veeder, Clark & Hupper, of New York City (Eugene Underwood, of New York City, of counsel), for the Waipawa.

Dow & Symmers, of New York City (John R. Sheneman, of New York City, of counsel), for Kingdom of Belgium.

MEDINA, District Judge.

I am now going to decide the case, and I am going to decide it in favor of Waipawa. I will make a few comments which may serve as the opinion, subject to revision at the time of the submission of the findings.

I accept Waipawa's version of the occurrence substantially as given by her master and certain other officers and members of her crew.

Seger's account is contradictory and inherently improbable.

As is generally the case, the basic physical facts are most helpful and significant.

While I have doubt on the subject, I shall find that the vessels were in a meeting, rather than a crossing, situation. As I see the case, Seger was solely at fault in either event. Even if it was a crossing, it was the duty of Seger to maintain her course and speed, which admittedly she did not do. Nor can Seger's change of course, made two full minutes before she reversed her engines, be viewed as an act to "avoid immediate danger."

While Waipawa was not restricted by a winding river course or shoals which made a certain course inevitable, the cases seem to apply the sinuosities rule to other situations very similar, if not identical, with the conditions prevailing with respect to vessels approaching and leaving New York Harbor by way of Ambrose Light Vessel.

Captain Whitacker's testimony is most significant. He observed Waipawa signalling for a pilot. He said he knew she was about to make the turn around Ambrose Lightship and that he knew she was coming into New York. Under these circumstances, whether or not we call it an application of the sinuosities rule, there would seem to be no possible injustice in holding that Waipawa at no time altered her course but merely changed her heading slightly as she proceeded to swing around the lightship in her approach to Ambrose Channel.

On Captain Whitacker's own testimony, therefore, the vessels were meeting, despite his insistence that they were crossing.

It is abundantly plain to me that the sole cause of the collision was Seger's change of course without warning coupled with her proceeding thereafter at full speed ahead until the danger was so imminent that the order to reverse engines was given without any preliminaries of slowing down or stopping. This faulty maneuver placed Waipawa in a perilous position from which there was no escape.

Captain Whitacker admits he changed his course at 7.43 Seger time when Waipawa was substantially more than half a mile away, and that he continued ahead thereafter at full speed of about eight knots for two minutes, not having given any whistle signal of the change of course. When he made this change of course, he said Waipawa was "just about dead ahead or a little bit on the starboard bow."

If, at 7.43 Seger time, Captain Whitacker had signalled the change of course of five degrees to the left while Waipawa was still over half a mile away, the collision would not have occurred. He had a similar duty to signal the further change of ten degrees to the left soon or immediately thereafter.

Perhaps the danger was so imminent that a whistle signal, at the time Captain Whitacker says he "swung her hard left," would have been futile, but the damage had already been done. Nothing done by either vessel at that time would have been of any avail.

I find no fault on Waipawa's part. Her failure to sight Seger until something over six minutes prior to the collision and at a distance of about two miles is understandable, in view of the lights of New York City in the background. It probably would have been sufficient, even if the lights had not interfered somewhat with visibility. The alterations of her headings and her curving course past the Light Vessel were made without warning signals, but the vessels were then so far apart that in all probability no warning signals would have been required, even had there been a change of course.

When, shortly before the collision, she did alter her course, it was in avoidance of collision, perhaps in extremis, and she gave the required one short whistle blast.

The orders to the engine room also seem to me to have been prompt and reasonable in every way.

It is hard to see what more she could have done.

You gentlemen will submit your findings in due course, and, in accordance with my usual practice, I shall be glad to have anybody criticise what I have in this tentative opinion I have just dictated. If I have something wrong in there, why, I want to correct it.

I shall sign findings and only findings which are supported by the testimony which I have indicated I gave credence to.

[N.B. Above opinion delivered orally at end of case.]