FEDERAL INSURANCE COMPANY
et al., Libelants,

v.

THE S. S. ROYALTON, her engines, etc.
and
Scott Misener Steamships, Ltd.,
Respondents.

Christoforos MANOPOULOS et al.,
Libelants,

v.

THE S. S. ROYALTON, her engines, etc.
and
Scott Misener Steamships, Ltd.,
Respondents.

Civ. Nos. 19891, 19201.

United States District Court
E. D. Michigan, S. D.

May 23, 1961.

Dickinson, Wright, Davis, McKean & Cudlip, Detroit, Mich., Bigham, Englar, Jones & Huston, New York City, of counsel, Joseph Kadans, Detroit, Mich., for libelants.

Hill, Lewis, Andrews, Granse & Adams, Detroit, Mich., McMillan, Binch, Stuart, Berry, Dunn, Corrigan & Howland, Toronto, Canada, McCreary, Hinslea & Ray, Cleveland, Ohio, for respondents.

KAESS, District Judge.

A collision occurred during a dense fog on Lake Huron, on June 25, 1959, between the S. S. Monrovia, registered in Liberia, and the S. S. Royalton, a Canadian ship. The Monrovia sank and these actions thereafter commenced against the Royalton, the one by the injured Greek seamen aboard the Monrovia and the other by the owners, shippers, consignees and underwriters of the cargoes on the Monrovia. The parties have agreed to adjudicate the issue of liability alone in this portion of the proceedings.

Extensive testimony was heard from crew members aboard the Royalton, the S. S. Norman W. Foy, which was following the Royalton at a distance of five miles, and the S. S. Fred A. Mansky, travelling parallel to the Royalton. As usual, conflicting facts were presented. The evidence, however, was incomplete to some degree by the absence of testimony from the crew members of the Monrovia concerning the operation of their ship.

We noted extensive examination, argument and conclusions made as a result of estimates concerning time and distances. Accuracies of time estimates during moments of stress are doubtful at best and should be further discounted in this situation where the argument depends upon estimates varying less than a few minutes. Therefore our findings of fact concerning time will primarily present a sequence of events and will not necessarily be conclusive for purposes of estimating speed and distances, unless absolutely necessary.

The S. S. Monrovia was an Empire type liberty ship, 447 feet 7 inches in length, and 56 feet 2 inches in beam. On June 25, 1959, laden with libelants' cargoes of steel, she was proceeding up Lake Huron during her maiden Great Lakes voyage. Captain Welland, a Canadian pilot, came aboard her at Port Weller, Ontario, but left early that morning at the Port Huron Light Ship outside of Sarnia, at the lower end of Lake Huron. Prior to his departure, Captain Welland advised the master of the Monrovia, which was without the aid of radar, to use the radio-telephone in case of "thick weather", and to follow the up and down bound recommended courses on the lake charts.

The S. S. Royalton is a Great Lakes bulk carrier, 536.5 feet in length, 58.25 feet in breadth and has a depth of 31.2 feet. Her net tonnage is 5,194 tons. On June 25, 1959 the Royalton was enroute from Duluth, Minnesota, to Montreal, laden with a cargo of grain. At 6:15 a. m. she departed from Detour Light at the head of Lake Huron and set her course for Middle Island. When the vessel was abeam of Middle Island, her course was changed to 161 degrees true and the vessel proceeded down Lake Huron toward Sarnia.

At 1145 hours, after encountering limited visibility, the Royalton's engine room was put on "stand by" and fog signals were sounded. At 1305 she was 9.6 miles off Thunder Bay Island, as measured by radar. This meant she was in the zone between the prescribed lanes for upbound and downbound vessels, 1.9 miles to the west of the downbound lane and 5.1 miles to the east of the upbound lane. At this point the Royalton corrected her course 2 degrees to port or left, still proceeding at full speed ahead, approximately 11 miles per hour.

At 1320 a pip or target was spotted on the Royalton's radar at a distance of 13 miles, located 2 degrees on the starboard bow. A 5 degree alteration to port was made at this time. When the target was 10 miles distant, at 1332 hours, it was 12 degrees off starboard bow. The Royalton again altered her course 5 degrees to port.

When the distance of the target closed to 5 miles, at 1340 hours, a fog whistle was heard 30–35 degrees on starboard bow. A security call on the radio-telephone was attempted in order to reach the other ship, which of course was later identified as the Monrovia, but there was no response. Simultaneously, the Royalton's course was altered for the third time to port, by 12 degrees, and the engine was ordered to proceed at "slow speed". A short time thereafter a two-blast signal was sounded by the Royalton to indicate a starboard pass, wherein each ship would pass to the right of the other. Fog signals were placed on auto-matic and a second security call was made. No response was received to either the passing signal or the security call.

A two-blast signal was again sounded by the Royalton a few minutes after the first. This time a one-blast signal was received from the Monrovia, which is a crossing rather than a passing signal. The Royalton's engine was then ordered full speed astern at 1350 hours and at 1354 was ordered double full astern. Danger signals by the Royalton were blown during this period, although the exact time is not clear.

The Monrovia appeared out of the fog, about 45 degrees on Royalton's starboard and was swinging hard to her right at what appeared to be full-speed ahead. The collision occurred at 1357 hours, while the ships were at an angle of 90 degrees relative to one another. The point of contact was the stem of the Royalton and the port side of the Monrovia, between number 1 and number 2 holds.

The officers and the crew of the Monrovia abandoned ship an hour after the collision. The master and several crew members returned to the sinking vessel shortly afterwards but did not remain long. The Monrovia sank at 12:15 a. m. June 26, 1959, a little more than 10 hours after the collision. In addition to the Royalton, the S. S. Norman W. Foy and the S. S. Fred W. Mansky were standing by the sinking ship.

The only issue presented is whether any faults or errors in the navigation of the Royalton contributed to the collision and the resulting injury to seamen and the loss of cargoes on the Monrovia.

There is no doubt from the above findings that the Monrovia was at fault and that her fault contributed heavily toward the collision. The Monrovia completely disregarded the prescribed upbound lane recommended by the Lake Carriers Association and the Dominion Marine Association, which appear on official charts of Lake Huron. See The Edward E. Loomis, 2 Cir., 1936,

86 F.2d 705. While travelling on her maiden Great Lakes voyage in a dense fog without radar, she didn't utilize her radio. She disregarded a two-blast starboard passing signal and the automatic fog signals of the Royalton by proceeding on a hard right rudder full speed ahead just before the collision. The general rule, which should be followed in this case, is that where fault on the part of one vessel is substantial, evidence of contributing negligence on the part of the other vessel should at least be clear and convincing. The Victory, 1897, 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 519; Alexandre v. Machan (The City of New York), 1893, 147 U.S. 72, 13 S.Ct. 211, 37 L.Ed. 84; United States v. The Waipawa, D.C.1948, 82 F.Supp. 151, affirmed United States v. Shaw, Savill & Albion Co., 2 Cir., 178 F.2d 849.

■ Although the Royalton was never within the downbound lane, we cannot hold that she was proceeding in violation of the prescribed routes. Captain Jacobsen sailed the Great Lakes for over 40 years and he did not find anything unusual in the manner in which the Royalton proceeded down Lake Huron. Moreover the master of the Foy, following the Royalton, stated as far as he was concerned both ships were on the downbound course. Both witnesses agree that the small deviation under the weather conditions prevailing cannot be considered a violation of the suggested routes. Compare The Edward E. Loomis, supra.

■ The possible violation of three statutory navigation rules of the Great Lakes are at issue in this case.

Rule 17, 33 U.S.C.A. § 282, provides:

"When two steam vessels are meeting end on, or nearly end on, so as to involve risk of collision, each shall alter her course to starboard so that each shall pass on the port side of the other."

It is evident that the ships involved in this collision were nearly head-on at a distance of 13 miles. However, at that time the target on the radar of the Royalton could not as yet have been identified as an upbound vessel, and the correction by the Royalton to port was as much an adjustment correcting course to the proper downbound lane as it was to avoid the unidentified pip. Under these circumstances there certainly was not a "risk of collision" at the distance of 13 miles which would require the adherence to Rule 17.

■ The first part of Rule 15, 33 U.S.C.A. § 272, deals with moderate speed and provides that:

"Every vessel shall, in thick weather, by reason of fog, mist, falling snow, heavy rainstorms, or other causes, go at moderate speed."

Because of our finding that the Royalton was checked to "slow speed" 17 minutes before the collision, this issue loses its importance. At the moment the Monrovia appeared out of the fog, the engines were actually "double full astern". There is no argument that the speed of the Royalton at that time was more than moderate and we cannot hold the Royalton at fault for what her previous speed may have been. The Ludvig Holberg, 1894, 157 U.S. 60, 15 S.Ct. 477, 39 L.Ed. 620.

The second portion of Rule 15 provides:

"A steam vessel hearing, apparently not more than four points from right ahead, the fog signal of another vessel shall at once reduce her speed to bare steerageway, and navigate with caution until the vessels shall have passed each other."

The libelants attempt to convince the court that the Royalton never checked her speed until 4 minutes before the collision. They rely on time and distance computations, the total number of revolutions by the propeller over a period of time, and evidence of the Foy that they were a constant 5 miles distant from the Royalton while maintaining a steady 11 miles per hour, in an attempt to discredit and replace the direct testimony of the mate, the master, and log books of the Royalton, which state that the Royalton was checked to slow ahead 17 minutes

before the collision. Even the similarity of time differences between the deck log and the engine room log, as to pertinent events where such similarities do not exist elsewhere is submitted as evidence of massive collusion and as "a mere reflection of what the Royalton's navigators wished they had done." Although the argument is persuasively presented, we feel that any doubt created is not such as to counteract the direct testimony of those on the Royalton, which is entitled to greater weight. See The Alexander Folsom, 6 Cir., 1892, 52 F. 403.

■ Libelants also argue that even if we accept the fact that the speed of the Royalton was reduced to slow ahead at 1340 hours, 17 minutes before the collision and at the time the fog signals were heard 30–35 degrees to starboard, or less than 4 points right ahead, this action did not reduce to bare steerageway *at once*, as required by Rule 15.

Bare steerageway is defined as the lowest speed consistent with the maintenance of headway. The George W. Roby, 6 Cir., 1901, 111 F. 601. There is substantial evidence in this case that slow speed for the Royalton is approximately 3 miles per hour, which, in turn, corresponds with bare steerageway in open waters. Here then the Royalton at once took action to reduce her speed to bare steerageway. We cannot accept libelants' impracticable position that the reduction itself must be *at once*. As long as the action to so reduce was taken *at once*, especially in this case where the vessels were still 5 miles apart on the Royalton's radar scope, the rule was not violated.

The third and final statutory rule in issue is Rule 18, 33 U.S.C.A. § 283, which provides that:

"When two steam vessels are crossing so as to involve risk of collision, the vessel which has the other on her own starboard side shall keep out of the way of the other."

■ After reviewing all the testimony, there appears little doubt that a starboard to starboard passing existed at the time the first two-blast signal was sounded by the Royalton. Although direct testimony concerning the Monrovia's movements is lacking, the "rapid closing of bearings" after the failure of the Monrovia to respond to either whistles or radio communication and the appearance of the Monrovia out of the fog on a hard rudder, strongly indicate a rapid change of course. Under these circumstances the Royalton did all that it could to avoid collision. See The Arfeld, D.C.1930, 42 F.2d 745, and the above rule cannot apply.

■ Although the possession of radar is not required, since the Royalton had radar she was obligated to use it in a proper manner. The Medford, D.C.E.D. N.Y.1946, 65 F.Supp. 622. In this case libelants argue that the Royalton was negligent in that a "plot" of the Monrovia was not obtained from radar observations which would have indicated a crossing situation. However there is insufficient evidence that such a plot would have disclosed a crossing situation. Compare Polarusoil v. Sandefjord, 2 Cir., 1956, 236 F.2d 270. On the other hand, the evidence is substantial that the Monrovia executed a rapid change of course that could not have been foreseen by the "plot". Under the circumstances, the absence of a plot was not in any way a factor in the accident.

The Royalton attempted to reach the Monrovia on the radio-telephone approximately 17 minutes before the collision. At least one other attempt followed. There was no answer received from either call. No evidence was submitted to prove that a call any sooner would have been successful, nor are we persuaded that the call signal was unnecessarily ambiguous. Under the circumstances no negligence has been shown in this regard.

Therefore it is the conclusion of the court that there were no faults or errors in the navigation and operation of the Royalton which contributed to the collision with the Monrovia.

Judgment may be entered for respondents.