**STANDARD OIL COMPANY OF CALIFORNIA, a corporation, Libelant,**

v.

**The S. S. ROTTI, her engines, tackle, apparel and appurtenances, and N. V. Stoomvaart Maatschappij "Nederland", a corporation, Respondents.**

**N. V. STOOMVAART MAATSCHAPPIJ "NEDERLAND", a corporation, Cross Libelant,**

v.

**The S. S. J. H. TUTTLE, her engines, tackle, apparel and appurtenances, and Standard Oil Company of California, a corporation, Cross Respondents.**

**Standard Oil Company of California, a corporation, Claimant.**

**No. 29545.**

United States District Court
N. D. California.

Feb. 28, 1967.

W. R. Buxton with Pillsbury, Madison & Sutro, San Francisco, Cal., for libelant.

Graham & James, San Francisco, Cal., for respondents.

## MEMORANDUM OPINION

WOLLENBERG, District Judge.

This is an action in Admiralty arising as a result of a collision between the S. S. Rotti, owned by respondent N.V. Stoomvaart Maatschappij "Nederland", and the S.S. J. H. Tuttle, owned by libelant Standard Oil Company of California. At the start of the trial herein, the Tuttle conceded its fault, so that the only question remaining is whether the Rotti is entitled to recover on its cross-libel.

The collision occurred on August 29, 1965 at 18:57 in the Main Ship Channel in the entrance to San Francisco Bay between buoys 4 and 6, closer to buoy 4. The Rotti was proceeding inbound on the southern side of the channel on a course of 70°; the Tuttle, at the time of collision, was on a course of approximately 325°, resulting from a last minute hard turn to starboard. The bow of the Rotti collided with the port side of the Tuttle, closer to the bow.

The Rotti first became aware of the Tuttle when her radar showed the Tuttle as an outbound vessel heading in a westerly direction on the northern part of the channel. The Rotti was then proceeding at about 12 knots. She entered the fog bank which she had earlier seen developing around buoy 4 at the same speed of 12 knots. She did not make any substantial change in her engine speeds until 18:52, when she saw the Tuttle on her radar proceeding southerly across the channel. At this time, the

Rotti put her engines at stop. She remained at stop for only one-half minute, changing her engines to half ahead then full ahead when the Tuttle appeared to be proceeding westerly on the south side of the channel. At 18:54½, the Rotti put her engines at stop-full astern when her radar showed the Tuttle to be heading back into the channel. However, she put her engines back to stop at 18:55, when her radar showed the Tuttle apparently proceeding on a course parallel to the channel and that of the Rotti's. At 18:56, it was clear from the Rotti's radar that the Tuttle was turning back into the channel, and her engines were put at full astern. The accident occurred one minute later.

■ In attempting to exonerate herself from liability, the Rotti relies on what she terms her "prudent and careful response" to the Tuttle's "navigational" acts. While it is true from the evidence that the Rotti's response to the Tuttle's erratic and unexplained maneuvers was based on the use of information gained from radar, this use of radar in and of itself is not sufficient to exempt the Rotti from the "moderate speed" requirement of Rule 16(a) of the International Rules for Preventing Collisions at Sea, which provides in part:

> Every vessel * * * shall, in fog * * * or any other condition similarly restricting visibility, go at a moderate speed, having careful regard to the existing circumstances and conditions.

The Radar Amendment to Rule 16 [33 U.S.C. § 1077(c), effective September 1, 1965] provides:

> A power-driven vessel which detects the presence of another vessel forward of her beam before hearing her fog signal or sighting her visually may take early and substantial action to avoid a close-quarters situation, but, if this cannot be avoided, she shall, so far as the circumstances of the case admit, stop her engines in proper time to avoid collision and then navigate

with caution until danger of collision is over.

This rule must be read in conjunction with the Annex to the Rules (33 U.S.C. § 1094, effective September 1, 1965) which reads in part:

> (2) A vessel navigating with the aid of radar in restricted visibility must, in compliance with Rule 16(a), go at a moderate speed. Information obtained from the use of radar is one of the circumstances to be taken into account when determining moderate speed. In this regard it must be recognized that small vessels, small icebergs and similar floating objects may be not detected by radar. Radar indications of one or more vessels in the vicinity may mean that "moderate speed" should be slower than a mariner without radar might consider moderate in the circumstances.

While these rules were not in effect at the time of the collision, the parties are in agreement that they reflect the standard of care required of ships having radar at that time. See, e. g., Skibs A/S Siljestad v. S/S Mathew Luckenbach, 215 F.Supp. 667 (S.D.N.Y.1963).

■ Using these rules as a standard in the instant case, the Court is of the opinion that the Rotti was going at an immoderate speed in violation of Rule 16(a), supra, when she entered the fog at 12 knots. While she did "see" the Tuttle on radar and apparently knew its course at the time of entering the fog, the Rotti was under a duty to reduce her speed when entering the fog so as to avoid the possibility of collision. The Julia Luckenbach, 219 F. 600 (E.D.Va. 1914), aff'd 239 F. 94 (4th Cir. 1916); The Edward E. Loomis, 86 F.2d 705 (2nd Cir. 1936); Villain & Fassio E Compagnia, etc. v. Tank Steamer E. W. Sinclair, 207 F.Supp. 700 (S.D.N.Y.1962).

■ The burden is thus put on the Rotti to show that this statutory violation could not have contributed to the collision with the Tuttle. The Pennsylvania, 19 Wall. 125, 86 U.S. 125, 22 L.Ed. 148 (1873); Anglo-Saxon Petroleum Co.,

Ltd., of London, England v. United States, 224 F.2d 86 (2d Cir. 1955). The Court is of the opinion that the Rotti had some headway through the water at the time of impact. We reach this conclusion in light of the records introduced into evidence relating to the engine speeds of the Rotti from the time she picked up her pilot at 18:33 until the time of collision. (Lib. Exh. 6; Hoedemaker Deposition). Although there was testimony that the Rotti was stopped dead in the water at the time of collision, this Court cannot ignore the fact that the Rotti's first stop at 18:52 was ineffectual to slow her progress through the water, in light of her maneuvers to one-half and then full ahead one half minute later. The Rotti must have been going close to her original 12 knots at 18:54½, two and one-half minutes prior to the collision. Her maneuvers thereafter were not enough to stop her dead in the water at the time of impact. If she had been moving at moderate speed when entering the fog, instead of at 12 knots, she would have avoided the collision.

■ Again, this Court refers to the requirement of Rule 16(c), supra. We read this amendment, particularly the requirement to take "early and substantial" action, as placing a duty on the Rotti in the instant case to at least have *remained* at "stop" five minutes before the collision until the risks of collision were over; in other words, the law placed a duty on the Rotti, when "sighting" the Tuttle via radar to take meaningful action at an early time, not at the last minute. All the Rotti needed to do was to stop and wait until the Tuttle had passed her safely instead of kicking her engines ahead five minutes before the collision. See, Afran Transport Company v. The Bergechief, 170 F.Supp. 893 (S.D.N.Y.1959).

■ In light of what we have said above, damages will be apportioned equally between the parties. Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). The amount of such damages will be determined at a later date to be set by this Court. Libelant will prepare findings of fact, conclusions of law, and judgment not inconsistent with this opinion.

So ordered.