THE RED JACKET.

(District Court, E. D. Pennsylvania. August 22, 1900.)

1. DEFECTS IN SHIP—INJURY TO STEVEDORE—NEGLIGENCE.
    There is negligence rendering a ship liable to a stevedore injured while taking off the covers of a hatch by a section falling in because of an athwartship being sprung out of line, so that when one of the covers was taken off it failed to support the remaining covers; there having been no inspection of the hatch for years, and the defect being one that an inspection would have shown.

2. SAME—CONTRIBUTORY NEGLIGENCE.
    A stevedore injured while removing the covers of a hatch by the falling in of a section thereof because of an athwartship being sprung out of line, so that when one of the covers was taken off it failed to support the other covers, is not chargeable with contributory negligence, though he had an opportunity to notice the defect during the three days preceding the accident, when he assisted in removing or replacing the covers, or was present while it was being done; he in fact not having noticed the defect.[1]

In Admiralty.

Willard M. Harris and T. L. Cobaugh, for libelant.
Biddle & Ward and N. Dubois Miller, for respondent.

[1] Negligence of both master and servant, see note to Wm. Johnson & Co. v. Johansen, 30 C. C. A. 678.

J. B. McPHERSON, District Judge. During the latter part of February and the early part of March, 1900, McBride, the libelant, with other stevedores, was unloading the cargo of the steamship Red Jacket, then lying at Girard Point wharves. The ship has four hatches; No. 2, at which the injury complained of occurred, being 24 feet long by 12 feet wide. No repairs had been made to the hatches for at least five years.

The wooden covering of No. 2 hatch was in three sections, supported by two athwartships, or strongbacks, running athwart the ship; and each section was supported in the middle by an iron fore and after, which fitted into cleats in the athwartships. The forward fore and after fitted into a cleat on the fore part of the combing, and ran to the forward athwartship, where it rested in a cleat; and on the other side of the forward athwartship the middle fore and after was placed, running to a cleat in the aft athwartship, on the other side of which the aft fore and after was placed in a cleat and extended to the aft combing. These rods and beams formed a framework upon which 24 wooden covers, 2x6 feet in breadth and length, and about $2\frac{1}{4}$ inches thick, were placed, fitting into grooves in the combing on the side of the hatch and on the fore and afters. The athwartships were 12 feet in length, about 3 feet high, and half an inch thick, beaded on the top and bottom to strengthen them, and weighed about 500 pounds apiece. The forward fore and after and the aft fore and after were of equal length, and weighed about 150 pounds. The middle fore and after was longer and heavier. When the wooden covers were all arranged along the grooves in the combings and the fore and afters, they presented a solid surface, sloping to each side of the hatch to allow the water to run off. Each wooden cover contained two rings fixed at diagonally opposite corners,— one near the central fore and after in a corner, and the other near the combing in another corner. Between the forward end of the combing and the mast was placed a steam winch, with a rope or fall running from the winch to a block in the mast and out to the end of a boom, where it dropped into the center of the hatch.

The libelant was the foreman of No. 2 hatch, and had been directing the stevedores in the removal of cargo from this particular hatch during the three days preceding the accident. At the conclusion of work on March 1 the stevedores had replaced the hatches in the usual manner, putting in their respective cleats the three fore and afters and the 24 wooden covers. They had not met with any difficulty or accident on the half dozen occasions when they had removed and replaced the hatches, each time walking on the covers while they were in place. On the morning of March 2 they started to take off the hatch covers, beginning with the aft section; one man standing on the covers on each side of the fore and after, leaning over and catching hold of the rings fixed near the fore and after, and sliding the covers off with the assistance of a man standing on deck. The wooden covers had been entirely removed from the aft section, the fore and after had been lifted out of its place by the aid of the steam winch, and two men holding on to each end were about to land it on the deck. The two men on the hatch covers—the libelant

110 F.—15

and another stevedore—had moved to the middle section of the covering, and McBride was about to lift the first cover of this section, when the whole section, covers and fore and after, fell into the hatch, precipitating both men a distance of some 16 or 17 feet, and thus doing the injury complained of. The reason why the hatch gave way was undoubtedly the fact that the aft athwartship had in some way become sprung out of line, so that, when the bracing pressure of the aft fore and after was removed, the athwartship sprang an inch or two out of place, and failed to support sufficiently the remaining covers of the hatch.

The questions for decision are whether the ship negligently permitted this condition of the hatch to exist, and, in that event, whether the libelant was guilty of contributory negligence. So far as the first question is concerned, I have no hesitation in answering it in the affirmative. It was the duty of the ship to exercise reasonable care in inspecting the covering of its hatches, and in seeing that they were in fit condition to bear the weight properly imposed upon them. The respondent denies, in general terms, that the athwartship was sprung; but as it would have been very easy for the ship to make exact measurements, and thus to furnish the court with precise information upon this subject, and as no such testimony is forthcoming, I lay little weight upon this general denial. It is, I think, impossible to account for the accident, except upon the theory that the athwartship was sprung so far out of place as to be incapable of affording proper support to the covers, unless the aft fore and after was in place. So far as appears, no inspection of the hatch had been made for several years, and I cannot but believe that such failure to inspect—or, if inspection had actually been made, the failure to repair—must be held to be negligence. It seems to me an irresistible inference that, if the hatch had been inspected, the defect would have appeared; and, certainly, if the defect had thus become known, as no attempt was made to remedy it, the negligence of the ship could scarcely be denied.

As to the second question, I am not able to hold that the libelant should be charged with contributory negligence. He had the opportunity of observing that the athwartship was sprung, because he either assisted in removing and replacing the covers during the three days preceding the accident, or was present when the covers were taken off and put on by other persons; but I am disposed to accept his positive testimony that he did not notice that anything was wrong, and I cannot say that, under all the circumstances in proof, his failure to observe the defect was a breach of legal duty.

The case must go to a commissioner to ascertain the damages upon the testimony already taken and such additional evidence as may be offered.