## KULUKUNDIS v. STRAND.
### No. 13229.

United ·States Court of Appeals
Ninth Circuit.

March 10, 1953.

Wood, Matthiessen & Wood and Erskine Wood, Portland, Or., for appellant.

Goodman & Levenson, Leo Levenson and Samuel Jacobson, Portland, Or., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

This appeal is from a decree awarding libellant Strand a judgment of $10,000 for injuries suffered aboard a vessel owned by appellant.

Strand was one of a number of longshoremen employed by an independent contractor, W. J. Jones & Son, to "line" appellant's ship, the Stathes J. Yannaghas. "Lining" requires the installation of a temporary wooden bulkhead in the hold of the vessel preparatory to the reception of a bulk grain cargo. Strand and another longshoreman, Ramsby, were assigned the task of raising and lowering into hold No. 4 the tools and timbers which were to be used in constructing the bulkhead. For this purpose it was necessary to build a platform by covering up the 'tween deck hatch. This is accomplished by first securing across the open hatch strongbacks or cross-beams to which are attached a T-shaped flange, and then placing the hatch covers in position between the strongbacks with the ends resting on the horizontal flange and against the vertical flange. In building the platform it is necessary to start along the coaming at the sides of the hatch and lay the covers tier by tier, working toward the center of the hatch to a point where a sufficient open space will be left near the center to permit the boards and tools to be raised and lowered. The hatch covers weigh between 50 and 60 pounds and, because of their weight and size, are usually handled by two men. Hatch covers and strongbacks are designed to fit into place without difficulty but the strongbacks and flanges in question here were defective in that they were bent out of shape, thus causing considerable difficulty in making required fittings. Prior to the accident some of the longshoremen had protested to their working boss that the hatch covers would not fit since the strongbacks were bent, refused to work further at covering the hold, and had moved to another part of the job. However, since they were the last two men on the work pad, Strand and Ramsby, as is customary in "lining" operations, had the responsibility of doing the 'tween deck work. Strand and Ramsby had successfully covered part of the hatch and were attempting with a 2 by 4 to pry a hatch cover into place when the accident occurred. Strand was standing on one hatch cover, exerting pressure upon the 2 by 4, when suddenly the hatch cover on which he was standing dislodged, causing him to fall to the bottom of the hold, a distance of about 25 feet.

The District Court found that appellant was negligent in not providing a safe place to work and in failing to supply strongbacks which would properly support the hatch covers; that the condition of the strongbacks made the vessel unseaworthy; that the negligence of appellant and the unseaworthiness of the vessel were the proximate cause of Strand's injuries; that Strand was not guilty of contributory negligence and did not assume the risk of the injuries sustained.

■ The Trial Court's findings are challenged. To the extent it is urged that the District Court resolved the factual issues against the weight of the evidence, we are limited in the scope of our review by the general rule, in admiralty proceedings, that the findings are not to be disturbed where they are supported by substantial evidence

710

and are not clearly erroneous.[1] Since the testimony of one witness, the ship's second mate, was by deposition, we have also borne in mind that the general rule in such case is subject to modification in the discretion of the appellate court.[2] Nevertheless, we are unable to say, on review of the entire record, that the District Court erred.

■ Appellant first challenges the finding of negligence on the ground that although the flanges were bent out of shape they and the hatch covers were "reasonably fit" for their purpose. The District Court had before it testimony that a ship's hatch covers normally fit easily into place; that the vessel's strongbacks and flanges were so bent that the hatch covers could be placed in position only with difficulty; that some of the longshoremen considered the situation so dangerous that they refused to continue trying to close the hatch. We cannot say, as a matter of law, that on the facts of this case the appellant did not create an unreasonable risk of harm to the longshoremen seeking to fit the hatch covers. The nature of the accident was similar to that in The Red Jacket, D.C.E.D.Pa.1900, 110 F. 224, where as here the strongback had "sprung out of line". The Court said:

"It seems to me an irresistible inference that, if the hatch had been inspected, the defect would have appeared; and, certainly, if the defect had thus become known, as no attempt was made to remedy it, the negligence of the ship could scarcely be denied." 110 F. at page 226. This reasoning is equally applicable to the present case.

■ In The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, the Supreme Court enunciated the doctrine that seamen were entitled to recover indemnity from a vessel or its owner for injuries caused by the unseaworthiness of the vessel, and that unseaworthiness embraced defective appliances appurtenant to the ship. Further, the

exercise of due diligence does not relieve the owner of his obligation to the seamen to furnish adequate appliances. Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561. This protection, traditionally afforded seamen, has now been extended to a longshoreman working on board a vessel on the theory that "he is doing a seaman's work and incurring a seaman's hazards." Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 99, 66 S.Ct. 872, 880, 90 L.Ed. 1099.

■ Appellant does not deny that the flanges and the strongbacks were bent. The vessel was properly found to be unseaworthy because of these defective appliances. The contention is made, however, that the doctrine of seaworthiness is not applicable to this case, reliance being placed upon Bruszewski v. Isthmian S. S. Co., 3 Cir. 1947, 163 F.2d 720, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113. In that case longshoremen were specially hired to remove the wreckage of a boom which had broken into two uneven parts, the larger part falling across the winches. We think the Third Circuit's holding that the doctrine of seaworthiness was inapplicable turned upon the fact that the longshoremen were employed for the very purpose of removing the unseaworthy condition which subsequently resulted in the injury, and therefore had no right to rely upon the vessel's seaworthiness. In the present case, on the other hand, the longshoremen had been hired to "line" the ship rather than to remove an unseaworthy condition. Construction of the platform by covering the hatch was incidental to this work.

■ The assertion is made that even if the ship was unseaworthy and the owner guilty of negligence this did not constitute a proximate cause of Strand's injuries. The exact manner in which the hatch cover on which Strand was standing slipped out

1. For example: The Rocona v. Guy F. Atkinson Co., 9 Cir., 1949, 173 F.2d 661; Fiamengo v. The San Francisco, 9 Cir., 1949, 172 F.2d 767, certiorari denied 337 U.S. 946, 69 S.Ct. 1503, 93 L.Ed. 1748; Ford v. United Fruit Co., 9 Cir., 1948, 171 F.2d 641; Heder v. United States, 9 Cir., 1948, 167 F.2d 899.

2. For example: Tawada v. United States, 9 Cir., 1947, 162 F.2d 615; United States v. Lubinski, 9 Cir., 1946, 153 F.2d 1013; Matson Navigation Co. v. Pope & Talbot, Inc., 9 Cir., 1945, 149 F.2d 295, certiorari denied 326 U.S. 737, 66 S.Ct. 46, 90 L.Ed. 439.

of place, precipitating him into the hold below, is not entirely clear from the record. The ship"s second mate, who was the only eyewitness, testified by deposition that the forward part of the hatch cover on which Strand was standing was in its place, but the aft part was riding upon the vertical flange of the strongback. The reasonable inference is that the pressure Strand exerted upon the 2 by 4 in an effort to pry the opposite hatch cover into place forced the aft part of the hatch cover on which he was standing further up on the flange, causing the forward end to dislodge entirely. Strand denied having personally placed the hatch cover on which he was standing, and appellant introduced no contrary evidence. The hatch cover was therefore apparently placed by one of the other longshoremen. This was not such a superseding cause as would bar appellant's liability. By providing a defective strongback, appellant created the initial condition which made it difficult to properly fit the hatch covers. That this condition might result in a hatch cover being insecurely placed should have been foreseen. The defective strongbacks greatly increased the probability that a hatch cover would be misplaced. Strand's fall resulted from an incident of the risk created by the supplying of the defective appliances, which therefore were a proximate or legal cause of the injuries suffered.

■ Appellant contends that Strand assumed the risk of injury by continuing to work at closing the hatch after observing the danger involved, and that relief is consequently barred. We do not agree. The Supreme Court has stated that assumption of risk will not be recognized as a defense barring relief in an admiralty suit where a seaman asserts the unseaworthiness of a vessel. See Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 429, 59 S.Ct. 262, 83 L.Ed. 265; The Arizona v. Anelich, 1936, 298 U.S. 110, 122, 56 S.Ct. 707, 80 L.Ed. 1075. As in the case of contributory negligence, the proper rule is that of comparative negligence. See Socony-Vacuum Oil Co. v. Smith, supra, 305 U.S. at page 432, 59 S.Ct. at page 267. Extension of the obligation of seaworthiness to longshoremen seemingly conveyed to longshoremen the protection of this doctrine in all its respects.[3]

■ Objection is made to the finding that Strand was not guilty of contributory negligence. Contributory negligence is not a complete bar to a suit brought in admiralty, but is ground only for mitigation of damages. The Max Morris, 1890, 137 U.S. 1, 11 S.Ct. 29, 34 L.Ed. 586; see Socony-Vacuum Oil Co. v. Smith, supra; The Arizona v. Anelich, supra. The question is accordingly one of comparative negligence. Appellant stresses that some of the longshoremen quit working on the hatch because they thought the work was too dangerous, while Strand continued working, knowing of the danger. Much of a longshoreman's work involves what in comparison to the risks of land work may be considered an element of danger. Although Strand knew of the defective condition of the strongbacks, we do not think that continuing to work created, as a matter of law, an *unreasonable* risk of injury to himself. Strand testified that he did not notice anything wrong with the hatch cover on which he stepped prior to the accident. His attention was directed primarily to the forward part of the hatch cover since it was at that end he was attempting, with a 2 by 4, to pry another hatch cover into place. Failure to notice that the aft part of the hatch cover on which he was standing was riding over the vertical flange cannot, as a matter of law, in all the circumstances of this case, be said to have been a breach of his duty of reasonable care.

There is adequate support in the record for award of the sum of $10,000 as fair compensation by way of damages.

The judgment for libellant is affirmed.

---

**3.** Fodera v. Booth American Shipping Corp., 2 Cir., 1947, 159 F.2d 795; Cf. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 92–95, 66 S.Ct. 872, 90 L.Ed. 1099.