**BERTEL et al. v. PANAMA TRANS-PORT CO. et al.**

No. 168, Docket 22572.

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1953.

Decided March 3, 1953.

Kirlin, Campbell & Keating, New York City (Raymond T. Greene, Ira A. Campbell, Rufus Barringer, New York City, of counsel), for appellees.

Jerome Y. Sturm, New York City (Abraham Fishbein, New York City, of counsel), for appellants.

Before AUGUSTUS N. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The tanker, Esso Copenhagen, was lying at anchor in the harbor of Valparaiso, Chile, on October 10, 1939 from one-quarter to one-half mile offshore with her stern inshore. She had arrived the day before with 4,400,000 gallons of gasoline, naphtha and kerosene in her tanks, and the cargo was being discharged into tanks ashore through a hose leading over her stern to the receiving tanks. Between 12:-30 and 1:00 P.M. the hose broke and gasoline and its vapors, spreading over the after part of the ship, were ignited by the flame from an oil stove in the galley on the

poop deck. There was an explosion which shook the ship and the flames spread with intensity over the poop deck and part of the main deck. The danger to the ship and the safety of the crew was grave, and in the ensuing panic the captain ordered the crew to leave the ship, as he puts it, "in order to save their lives." All jumped overboard except the Chief Engineer, Lund, and five men in the engine room who were not informed of the captain's order. According to the captain he was among the last to leave and was picked up by a launch about twenty meters from the ship and then tried to get "some fire-extinguishing boat" to go to the aid of his ship. He did succeed in being transferred to a navy tow boat which had fire extinguishers and went back in it to his ship, but the fire had been completely put out before he reached the vessel and went aboard. The fire had lasted about half an hour and had been extinguished through the heroic efforts of the libelants. They are Lund and four of the five men who were left in the engine room when the others jumped into the water.

According to Lund, the captain was panic stricken and after ordering the crew to jump for their lives was among the first to jump overboard. Lund, however, telephoned to the men in the engine room to come on deck, and when they did he asked them to help him put out the fire. All but one bravely went to his assistance and extinguished the fire, having courageously exposed themselves to great danger to limb and life in so doing.

The crew members who had gone ashore were unruly and got out of control of the captain and the officers, but by the following morning they were returning to the vessel. Repairs were made and the discharge of the cargo was resumed at 4:55 in the afternoon of October 11th and completed the next day at 4:10 P.M. The ship continued on its voyage that afternoon, sailing with its crew, with the exception of one injured man and one deserter, for San Antonio, where the deserter returned to the vessel.

The libelants were rewarded for their valiant conduct by being given bonuses equivalent to two months' pay. No suit for salvage was brought until April 16, 1946 when all the present libelants but Lund and Arne Sorensen filed a libel *in personam* against Panama Transport Company, the owner of the vessel, and Esso Standard Oil Co. (Chile), S.A.C., then West India Oil Co., Chile, S.A.C., the owner of the cargo. Later Standard Oil Company (N. J.) and Standard Oil Company of New Jersey were added as respondents and still later were dropped from the action. Both Lund and Arne Sorensen were added as libelants after the suit was brought. The answer put in issue the liability of the respondents for salvage and also whether the suit was barred by the statute of limitations, 46 U. S.C.A. § 730.

Since all of these libelants were members of the crew when the fire broke out on the vessel, they must show in order to recover salvage for what they did, however meritorious their conduct may have been, that they had been discharged from their obligations as such to the ship before they put out the fire. Their duty to do the best they could to save their ship arose from the nature of their employment and continued while that employment lasted and its fulfillment entitled them to no additional compensation by way of salvage or otherwise. The general rule in that respect remains as Mr. Justice Story stated it in Hobart v. Drogan (The Hope), 10 Pet. 108, 121, 9 L.Ed. 363.

But after they have been discharged from such duty they may become salvors just as strangers to the ship might. One way that status may be brought about is by the complete abandonment of the ship without intent to return or to make any effort to save her. Mason v. The Blaireau, 2 Cranch, 240 2 L.Ed. 266; The Umattilla, D.C.N.D.Cal., 29 F. 252; Baretich v. U. S., S.D.N.Y., 97 F.Supp. 600. This exception to the general rule that seamen are not entitled to salvage for saving their own vessel was well put in The C. P. Minch, 2 Cir., 73 F. 859, 865, as follows: "* * * it is apparent that, in every case where compensation in the nature of salvage has been awarded to seamen, the voyage has

terminated by the shipwreck of the vessel, which has either gone to the bottom or left her bones on the shore, or she has been abandoned by all, or by all except the salvors, under circumstances which show conclusively that the abandonment was absolute, without hope or expectation of recovery, or the seaman has been by the master unmistakably discharged from the service of the shipowner."

So decision here turns upon whether the libelants have shown that their duty to the ship as members of its crew was ended before they put out the fire by proving circumstances which show that the abandonment was absolute. They had the burden of proof as to that.

There is no doubt that in the confusion following the outbreak of the fire the captain's first thought was to get what men he could off the ship, but things happened too fast to make it clear from the evidence that his abandonment of the ship was more than temporary to save lives. His efforts to get fire fighting aid and return to the ship with it are some indication that there was no final abandonment. And it is to be remembered that the ship was in harbor where efforts on his part to return with help for saving the ship would not inevitably prove futile, as they might well have been had the fire occurred when the vessel was at sea. After due consideration of all the circumstances shown, the trial judge concluded that the fact of final abandonment of the vessel had not been established by at least a preponderance of the evidence. Since all of the evidence was documentary or by deposition and the trial judge did not hear or see the witnesses, we are in as good a position as the lower court to evaluate it. Although under these circumstances the "clearly erroneous" doctrine is not applicable, Panama Transport Co. v. The Maravi, 2 Cir., 165 F.2d 719; Stokes v. United States, 2 Cir., 144 F.2d 82, we see no justification for reversing the holding below that the libelants failed to establish that there was a final abandonment of the vessel.

As we find no error in the dismissal of the libel on the merits, we do not reach the defense in the answer based on the statute of limitations.

Decree affirmed.