**FEDERAL INSURANCE COMPANY et al., Libellants-Appellees,**

v.

**S.S. ROYALTON, Her Engines, Etc., and Scott Misener Steamships, Ltd., Respondents-Appellants.**

**No. 15570.**

United States Court of Appeals
Sixth Circuit.

March 3, 1964.

.516

Lucian Y. Ray, Cleveland, Ohio, McCreary, Hinslea & Ray, Cleveland, Ohio, McMillan, Binch, Stuart, Berry, Dunn, Corrigan & Howland, Toronto, Canada, on brief; F. O. Gerity, Toronto, Canada, of counsel, for appellants.

Leonard J. Matteson, New York City, Dickinson, Wright, McKean & Cudlip, Detroit, Mich., Bigham, Englar, Jones & Houston, New York City, on brief; Fred W. Freeman, Detroit, Mich., and Donald M. Waesche, Jr., New York City, of counsel, for appellees.

Before MILLER, CECIL and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This is an admiralty case involving a collision on Lake Huron between the Canadian vessel, the S. S. Royalton, and a Liberian vessel, the S. S. Monrovia. The Monrovia sank some ten hours after the collision. The District Court order, sought to be reviewed by this appeal, was entered following our decision in this same cause, reported as Federal Insurance Co. v. S. S. Royalton, 312 F.2d 671 (C.A.6, 1963). In reversing the judgment of the District Court, 194 F.Supp. 543 we there held that those in charge of the Royalton were guilty of described navigational faults and had failed to establish that such faults could not have contributed to the collision. Libellants, Federal Insurance Company, et al., as owners and underwriters of the Monrovia's cargo, had brought this action to recover for the loss they sustained as a consequence of the sinking of the Monrovia.

In addition to its denial of any negligence, the Royalton had asserted, in its defense, that if it was guilty of any negligence, such negligence was not a proximate cause of the total loss of the Monrovia's cargo. Its claim in this regard is that the failure of the master of the Monrovia to take steps available to him, to beach his vessel during the ten hours that it remained afloat after the collision was negligence that broke "the chain of causation" and that this negligence was

the sole proximate cause of the total loss of the Monrovia's cargo. In view of the District Judge's original finding that the Royalton was free of any fault in the collision, he did not, in his first opinion, pass on this question.

After our reversal of the case, Royalton's counsel made a motion requesting the District Court to make a special finding on the issue of the alleged post-collision negligence of the Monrovia. They asked for an interlocutory decree excluding from any award of damages that part thereof which they claim was sustained as a result of the charged post-collision negligence of the Monrovia. The District Judge denied the motion. We affirm such denial.

 There is authority for the proposition that plain and inexcusable failure, on the part of those in charge of a vessel stricken in a collision, to take available steps to prevent further damage, may, under some circumstances, exonerate another vessel, originally at fault, from liability for the additional damage. The Baltimore, 75 U.S. (Wall) 377, 387, 19 L.Ed. 463; The Asbury Park, 147 F. 194 (C.C.A. 2, 1906); The Redwood, 81 F.2d 680 (C.A.9, 1936). A heavy burden, however, is cast upon him who relies upon such rule. As stated in The Algonquin, 70 F.2d 335, 336, 337 (C.A. 2, 1934), "To be relieved of liability they must show an intervening act of negligence *so extravagant and unusual, and in such disregard of every rule of prudence,* as to be beyond the horizon of ordinary foresight." (Emphasis supplied.) See also The Walter A. Luckenbach, 14 F.2d 100, 103 (C.A.9, 1926), cert. denied 273 U.S. 741, 47 S.Ct. 335, 71 L.Ed. 868.

Proofs had been taken on this issue at the original trial. These disclosed that the collision occurred in a dense fog on Lake Huron. After the collision, the Monrovia veered off and disappeared in the fog. About an hour later, its master and crew came in lifeboats to the Steamship Foy, which was standing by. The master of the Monrovia did not then go aboard the Foy, but with his chief officer and several of the crew left to return to the Monrovia to "get his papers and documents and *make a survey of the vessel.*" (Emphasis supplied.) Sometime thereafter, the Monrovia's master, with his men, returned and went aboard the Foy. He stated to the captain of the Foy that he had made a survey of the Monrovia and that his ship "had quite a hole and was making water fast." He stated that the Monrovia "was in a sinking condition it would sink in about an hour or an hour and a half." The Monrovia's master and crew then remained aboard the Foy until the Monrovia sank. Most of this time fog kept the Monrovia out of sight of the vessels standing by. An hour before the sinking, the Foy moved to within 250 feet of the Monrovia and at that time she was "down by the head with a port list, and the name was just about a foot above the waterline, the name on the prow." Underwater photographs taken of the sunken vessel disclosed the damage done in the collision. None of the experienced Great Lakes mariners, who were the masters of the Foy, the Royalton, or the vessel Mansky—all of which were standing by in the area—suggested to her master that the Monrovia, by her own power or under tow, might be taken to a place where it could be beached. The closest point available for such beaching was some sixteen miles away. Neither the master nor any of the crew of the Monrovia were called as witnesses: they had evidently left the country after the collision. The owners of the Monrovia were not parties to the litigation.

At the trial, the libellee Royalton produced as an expert witness a college professor, with impressive academic qualifications in navigation and in marine engineering and practice. He had never, however, applied these qualifications in the actual navigation of a ship, in calm or troubled waters. He testified to his opinion that had the Monrovia's master taken various steps, consistent with accepted principles and practice of navigation, his ship could have been beached during the hours she remained afloat and her cargo saved from total loss. We need not here set forth the elements

which made up the basis of his opinion. Not any of the masters of the vessels that were at the scene nor any experienced Great Lakes pilots gave evidence to support the professor's conclusions. It is sufficient to say, however, that it was put to the District Judge, as trier of the facts, to weigh the decision of the Monrovia's skipper to abandon ship after his final survey and his conclusion that it would sink in about an hour, against the conclusions of the expert, arrived at in his calm and unhurried contemplation of what might have been done.

■ The District Judge's finding, denying appellants-respondents' motion, is in part as follows:

"(T)he failure of those in charge of the Monrovia to take steps to check the flooding of her holds and attempt to tow her to a beach was not so extraordinary as to break the line of causation.

"The testimony of Louis A. Baier, a professor of naval architecture, did suggest that it might have been possible to tow the Monrovia to a beach and save the cargo from total loss, and this Court agrees that it could have been done—but that it is hindsight. The evidence did not establish clearly the faults of those in charge of the Monrovia in not attempting to save the cargo when placed under the stress of the collision."

■ We consider the foregoing as a finding of fact on the issue before us. While Rule 52(a), F.R.Civ.P., does not apply to admiralty cases, the Supreme Court has directed that a District Judge's findings of fact in admiralty may not be set aside unless clearly erroneous. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. See also our decisions: The William A. Paine, 39 F. 2d 586 (C.A.6, 1930) ; The City of Cleveland v. McIver, 109 F.2d 69 (C.A.6, 1940) ; West Tennessee Limestone Co. v. Federal Barge Lines, Inc., 288 F.2d 663, 664 (C.A.6, 1961). We cannot say that the foregoing finding of fact was clearly erroneous.

The District Judge's order denying libellee's motion for a special finding is affirmed.