ARCTIC SHIPPING CORPORATION, Appellant,

v.

GULFCOAST TRANSIT COMPANY et al., Appellees.

No. 20950.

United States Court of Appeals Fifth Circuit.

June 25, 1964.

Rehearing Denied Aug. 15, 1964.

James O. Davis, Jr., Cody Fowler, Fowler, White, Gillen, Humkey & Trenam, Tampa, Fla., Brendan P. O'Sullivan, Tampa, Fla., of counsel, for appellant.

L. Robert Frank, John Bell, Wm. C. Blake, Jr., Tampa, Fla., Knight, Bell & Jones, Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and BREWSTER, District Judge.

TUTTLE, Chief Judge:

This is an appeal from an interlocutory decree in admiralty fixing liability for a head-on collision between the M/V "ARCTIC REEFER" and the S/S "MARTHA MAC", which occurred in broad daylight in Cut C channel of Hillsborough Bay, Tampa, Florida. The disposition of this appeal also disposes of the problem of who should pay for damages to the tug "JOHN C" belonging to Gulf Florida Terminal Company, which was made up to the MARTHA MAC at the time of the collision.

As would naturally be expected when a head-on collision occurs in broad daylight in a channel which is wide enough

for two ships to pass without interference, there is much dispute in the testimony at the trial, part of which was by deposition and part of which was in open court. Unfortunately the findings of fact by the trial court did not resolve many of these disputes. Nevertheless, there is enough in the undisputed area so that by application of the appropriate legal principles involved this Court can make a final disposition of the issue of liability.

Since the conduct of the steamship MARTHA MAC constituted the first untoward incident in the series of events which terminated in the trial court with the complete absolution of this vessel at the expense of the other participant, we commence a statement of the facts by reciting MARTHA MAC's actions as she approached northerly inbound up Channel C, a cut 400 feet wide with ample depth for both vessels. The MARTHA MAC is approximately 523 feet long and 68 feet wide. As MARTHA MAC approached Beacon 29 she moved to the west, her port, side of the cut. The purpose for this maneuver, which would obviously place her in the normal path of any vessel outbound which was observing the normal rule of the road, was because she planned, just north of Beacon 31, at a distance of 6300 feet, to turn to her starboard into Black Point Channel, a narrower channel leading to MARTHA MAC's destination. This channel was not a right angle turn but was at about 135 degrees. It was admittedly easier, although not necessary, for MARTHA MAC to make this righthand turn into Black Point Channel if she swung off to her port side before making the turn. Just before she turned to her left, or port, there became visible to her the outbound motor vessel ARCTIC REEFER, which, at that time, was headed south-

ward in Cut D channel. This cut joined Cut C channel a few hundred feet north of Beacon 31, at an angle formed with Cut C channel of 149 degrees. Since MARTHA MAC was thus at the extreme left side of the channel as to her, which would normally be a violation of Article 25 of the Inland Rules,[1] and since she wished to stay on that side she sounded two blasts of her whistle requesting a starboard to starboard passing. She received no response from the ARCTIC REEFER.[2]

Thereafter things happened rather rapidly. MARTHA MAC proceeded at two to three knots, and ARCTIC REEFER swung into Cut C at seven to eight knots. It is undisputed that neither captain was aware of the position in the stream of the other vessel until ARCTIC REEFER completed her turn into Cut C. At this time the vessels were somewhere between a half a mile and a mile apart, headed directly into each other's bows. MARTHA MAC again requested a starboard to starboard passing by giving two blasts of her whistle. The ARCTIC REEFER responded with one blast, contending that she had heard only one blast from the MARTHA MAC. With the gap rapidly closing between the two ships, MARTHA MAC then sounded the danger signal, which the master of the ARCTIC REEFER said came too late to avoid the head-on-collision which followed immediately thereafter.

The court found that the collision occurred "somewhere between 1000 and 3000 feet south of Beacon 31." The court did not resolve the conflict in testimony as to this point. Assuming that it occurred at 3000 feet south of Beacon 31, which would be most helpful to the MARTHA MAC, this would mean that while the vessels were just a half a mile apart, MARTHA MAC was still asking

1. 33 U.S.C.A. § 210: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

2. Such a signal is merely a request for the consent of the other vessel to pass con-

trary to the provisions of Article 25. Without a response of two blasts from the other vessel, indicating consent, the MARTHA MAC would be guilty of serious fault if she persisted in remaining on the west side of the channel.

for an agreement from ARCTIC REEF-ER for a starboard passing. At this time it is undisputed that MARTHA MAC was moving at a slow speed which would have made it difficult, if not impossible, for her to have moved off to her starboard side of the channel where, up to that time, it may be said she ought to have been if her request was denied.

The trial court said:

"While the evidence is to some extent in conflict, there is no dispute in this record on the important question presented. The MARTHA MAC at the time of the collision was in violation of the narrow channel rule—Article 25, Inland Rules of the Road, 33 U.S.C. § 210. This rule provides that 'in narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or midchannel which lies on the starboard side of such vessel.' "

The court found, however, that the pilot of ARCTIC REEFER was charged with notice that MARTHA MAC was in his direct course, and that he was charged with knowledge as to why MARTHA MAC was in this position, the court apparently reasoning that if MARTHA MAC had a good reason for swinging off to her starboard, this, of itself, would justify requiring ARCTIC REEFER to execute a starboard to starboard passage without the necessity of having an agreement by signals to this effect. The court then held that the violation by the MARTHA MAC of Article 25 "was a condition and not a contributing cause of the collision." It found that the ARCTIC REEFER was at fault in not passing to the starboard side of the MARTHA MAC since "there was more than 300 feet of clear channel lying east of the MARTHA MAC and nothing to interfere with the ARCTIC REEFER executing a starboard to starboard passage under all the circumstances of the case." The court apparently overlooked the fact that the pilot of ARCTIC REEF-ER was awaiting a response to his single blast, or had thought that his single blast

was in acknowledgment of a single blast which he testified he had heard from MARTHA MAC.

In arriving at its conclusion, the trial court placed reliance largely on Socony Vacuum Oil Co. v. Smith, 5 Cir., 179 F.2d 672, and called attention to The Perseverance, 2 Cir., 63 F.2d 788, Matton Oil Transfer Corp. v. The Green, 2 Cir., 129 F.2d 618, and Hedger Transfer Corp. v. Hart, 2 Cir., 163 F.2d 90. We think these decisions do not touch on the case at bar. In Socony Vacuum, this Court affirmed a finding of sole liability on an overtaking vessel which proceeded at twice the permitted speed at night in the inland waterway and collided with the rear of a tow of several barges, whose only fault was their presence on the port side of the narrow channel. The Court placed the entire burden on the overtaking vessel, because of her gross fault both in proceeding at excessive speed under the circumstances, and failure to observe the lights of the overtaken flotilla, and in failing to pass safely port to starboard if she sought to pass without receiving a response to her signal request for a normal passing in an overtaking situation. The Perseverance deals with an anchored ship whose only fault lay in her being anchored in the fairway at a time when there was ample fairway remaining for easy passage by the flotilla that ran her down. It appears to us that the decision of the Court of Appeals for the Second Circuit in the Matton Oil Transfer Corp. case supports the position of the appellant here. We find nothing significant in Hedger Transfer Corporation that assists us in determining the law in this case.

■■ We cannot reverse the trial court's finding of fault on the part of ARCTIC REEFER. While arguably her pilot may have had a difficult choice to make once he was fully aware of the position of the MARTHA MAC, we cannot overturn the finding of fact by the trial court to the effect that he was aware of the practically unmaneuverable condition of the MARTHA MAC at a time when he still had an opportunity to execute a starboard to starboard passage, and thus

avoid the collision. On the contrary, however, we cannot condone the maneuver of the MARTHA MAC which, without reference to other vessels in whose path she might place herself, proceeded to the port side of the channel before requesting a starboard to starboard passage, and then insisting on such a passage at a time when a failure of consent by ARCTIC REEFER would lead to the clear danger of collision. MARTHA MAC's attempted reliance upon the exception to the narrow channel rule on the ground that it is applicable only when "it is safe and practicable" will not do. Appellee seeks to equate its own convenience in making an easier starboard turn into Black Point Channel to a situation where MARTHA MAC's following the rule by staying on her proper side of the channel would amount to "a blind observance" which would "produce disaster." There is no such issue in the case. There is no basis for the contention that MARTHA MAC's deviation from the narrow channel rule is excused on the ground that for her to follow it would be unsafe or impracticable. Nor can MARTHA MAC's departure from the rule be justified, as contended by appellee, by the General Prudential Rule.[3] There can be no valid contention here that the MARTHA MAC maneuver was caused by any immediate danger. Her execution of the maneuver on the other hand, which placed her on the wrong side of the channel at a time when her exact intentions could not fairly be appraised by a vessel approaching outbound down Cut D rather put herself into a position of immediate danger. It also put any outbound approaching vessel in Channel D in a position of immediate danger. We would also emphasize that these conditions came about primarily because MARTHA MAC persisted in a starboard to starboard passage without getting assent and without blowing the danger signal when she knew that the ARCTIC REEF-

ER had not assented, but had, to the contrary, blown a cross signal of a single blast.

 We conclude that the trial court erred in not dividing the damages equally between the parties. Equal liability also exists with respect to the claim of the tug JOHN C.

The judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

---

3. Article 27: "In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger." 33 U.S.C.A. § 212.