**Ricardo Fotys CARADELIS, Libellant,**

v.

**REFINERIA PANAMA, S.A., Respondent.**

**REFINERIA PANAMA, S.A., Cross-Libellant,**

v.

**Ricardo Fotys CARADELIS, Cross-Respondent.**

**No. 2662.**

District Court, Canal Zone, Cristobal Division.

Jan. 31, 1966.

De Castro & Robles, Balboa, Canal Zone, for libellant and cross-respondent.

Roy Phillipps, Balboa, Canal Zone, Arias, Fabrega & Fabrega, Panama, Republic of Panama, for respondent and cross-libelant.

CROWE, District Judge.

STATEMENT OF THE CASE

This is an action in admiralty arising out of the collision between the barge, OILBAR Number 3, which was in tow of the tug PAYARDI, and the trading vessel, the MV CORSARIO. The collision occurred on the morning of November 1, 1963 at about 4:00 a. m. in the waters of the Canal Zone, in good weather, when the sky was clear, and visibility, except for the darkness, was good.

The tug PAYARDI and the barge, OILBAR Number 3, were owned and op-

erated by the respondent-cross libellant, Refineria Panama, S. A., and the MV CORSARIO was owned and operated by the libellant and cross-respondent, Ricardo Fotys Caradelis. The libellant-cross respondent is claiming damages by reason of the alleged negligence of the master of the tug PAYARDI, and the respondent-cross libellant has denied all responsibility and under its cross-libel is suing for damages by reason of the alleged sole fault and negligence of the captain and crew of the MV CORSARIO.

## FINDINGS OF FACT

1. The MV CORSARIO is a Panamanian registered wooden hull cargo motor vessel of approximately 75 net registered tons, over-all length of approximately 96 feet and beam of about 18 feet, and develops a speed of about six knots on a full ahead engine. At the time of the collision, her draft was about 6 feet 6 inches aft and 5 feet forward. The vessel is owned and operated by Ricardo Fotys Caradelis and her master at the time of the collision was Captain Luis Lyons. No log books were kept by the MV CORSARIO nor did the vessel have any way to plot its course or establish its bearings nor were any records kept of the times and events of the incident. The record does not reflect that there was a rudder angle indicator or an engine room indicator on the bridge or wheelhouse, and the seaworthiness of the MV CORSARIO is doubtful.

2. The tug PAYARDI is a Panamanian registered motor vessel of approximately 77 feet over-all length with approximately 650 horse power and develops a speed of between 5½ and 6 knots on a full ahead engine with a laden tow. At all material times herein, she held valid Inspection Certificates from the Panama Canal and American Bureau of Shipping. At the time of the collision, her draft was 10 feet 6 inches aft and 8 feet 7 inches forward. A log book is kept on the tug and the vessel is equipped with a rudder angle indicator and an engine room indicator on the bridge. All of the equipment of the tug was in good

working condition on the day of the accident.

3. The barge, OILBAR Number 3, is an oil-carrying barge of approximately 200 feet over-all length, and at the time of the collision its draft was 12 feet 2 inches even with a freeboard of approximately 3 to 4 feet.

4. All regulation running lights on board the tug PAYARDI and barge, OILBAR Number 3, were burning properly. Both vessels at all material times herein were in seaworthy condition as to physical fitness and handling requirements and were owned and operated by Refineria Panama, S. A., a Panamanian corporation. The master of the tug at the time of the collision was Captain Raul Guerra, who was in command at all material times.

5. The tug PAYARDI and its tow, the barge, OILBAR Number 3, which was fully laden with Bunker "C" Fuel Oil, left Las Minas Bay on the Atlantic side of the Isthmus at approximately two minutes after 3:00 on November 1, 1963 bound for Balboa, Canal Zone on the Pacific side of the Isthmus. Upon approaching the Cristobal breakwater, the master of the tug PAYARDI, who was on the bridge in command of his tug, saw a ship coming from the breakwater area showing its red light. The mate was at the wheel of the tug. The tug PAYARDI was also showing its red light to the CORSARIO. After keeping his sights for a while on the ship coming from the breakwater and noticing that the ship, which was the CORSARIO, was on a closing course toward the tug and its tow, the master of the tug, at about 3:40 a. m., ordered a 30 degree starboard rudder and at the same time he blew a one-whistle signal to inform the CORSARIO that the tug was altering its course to starboard. The signal was not answered by the CORSARIO even though it was heard and understood by the master of that vessel. At approximately 3:50 a. m., because the CORSARIO continued to "close in" on the tug and its tow, Captain Guerra sounded the danger signal, "four danger signals successively given", be-

cause of the fact that the boat was getting dangerously near.

6. The routes followed by the tug PAYARDI and its tow placed them in a meeting situation or collision course. Neither vessel changed its course or speed until they were very near to each other. The move of the PAYARDI in turning to starboard was sufficient and timely enough to avoid a collision with the CORSARIO, but the CORSARIO continued on the same course and speed from the time it left the Cristobal breakwater, and even though the master of the PAYARDI had given the warning signal, the CORSARIO failed to slacken its speed until almost upon the barge. The master of the CORSARIO did not understand the lights on the tug PAYARDI so did not know there was a tow until he was already upon the tow rope and barge. The PAYARDI had already turned to starboard, but the CORSARIO continued on her course until it was too late. She then attempted to turn but could not avoid striking the barge. Had she turned to starboard earlier, she could have avoided the towline and barge. Had her captain known the meaning of the lights, he could have turned early enough to have saved his ship. In spite of the warning signals of the PAYARDI, and in spite of the fact that she turned away, Captain Lyons of the CORSARIO stubbornly maintained his course and speed until he was full upon the tow 130 feet behind the stern of the PAYARDI and collision with the barge was unavoidable. The CORSARIO having caught itself upon the rope was subsequently rammed on its starboard side by the bow of the barge and sufficient damage was done to her hull to cause her to begin to take water and start to sink.

7. The master and crew of the tug and the barge rendered all possible assistance to avoid loss of life on board the CORSARIO and to minimize material losses to the vessel.

8. All of the actions of Captain Guerra and the crew of both the tug and the tow prior to the collision and at the time thereof and subsequent thereto were properly done in ample time and with due regard to the observance of good seamanship.

9. Captain Raul Guerra, Master of the PAYARDI, during all material times held a Master's License for 400 ton vessels issued by the Port Captain of Colon after satisfactorily passing an oral examination.

10. Gerardo Antonio Sued, First Mate of the tug, who was at the wheel at the time of the collision, holds a First Mate's License for 1500 ton vessels issued by the Port Captain of Panama after satisfactorily passing a written examination, and he also holds a license from the Government of Honduras.

11. Captain Lyons is only a "Captain for the San Blas Coast", but nevertheless he was navigating and in the area where the main trade routes of international commerce converge. He did not understand the meaning of whistle signals at the time of the collision with the possible exception of the one-whistle signal. He has no knowledge as to the reading of charts nor does he have any knowledge of the meaning of navigational lights.

12. Manuel Silvestre Vasquez, mate of the CORSARIO, who was at the wheel at the time of the collision, also lacks basic knowledge as to the meaning of whistle signals.

13. The owner of the MV CORSARIO, libellant-cross respondent herein, took command of the CORSARIO immediately prior to the collision and continued in command until the beaching of the vessel. Mr. Caradelis does not hold a mariner's license in any capacity.

14. The tug PAYARDI was carrying in a vertical position on its mast one white light more than is required by the Rules and carried all the regulation running lights, and they were burning at the time of the collision. The additional white light signified that the tug was towing more than one tow and that the length of the tow, measuring from the stern of the tug to the stern of the last vessel towed exceeded 600 feet. The ad-

ditional white light on the mast should have made a mariner, who understood the significance of lights, even more cautious than would have been ordinarily necessary. The showing of the additional white light not only did not contribute to the collision but should have acted as an additional warning to the mariners on the other vessel.

15. The barge, OILBAR Number 3, which was being towed by the tug, in addition to carrying the minimum required lights for a barge in tow, was showing a red mast light because of the nature of the cargo being transported. No one on the CORSARIO saw the red mast light until after she was afoul of the tow rope. Therefore the red mast light on the OILBAR did not create any confusion on the part of the mariners on the CORSARIO.

16. At the time of the collision and immediately prior thereto, the weather was very good, the sky was clear, there were no strong winds or currents and visibility was good.

17. The collision occurred in waters of the Canal Zone to seaward outside a line connecting East Breakwater Light and West Breakwater Light at the Atlantic Entrance to the Panama Canal in Limon Bay.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and subject matter of the action as the collision occurred in waters under the jurisdiction of the United States in the Canal Zone.

2. The regulations applicable to the navigation of ships in the area where the collision occurred are the International Rules of the Nautical Road, in effect since January 1, 1954, and the International Regulations for Preventing Collisions at Sea, which were revised as of January 1, 1954, and were in effect at all material times herein.

3. Rule 18 of the International Rules, 33 U.S.C.A. § 146b, is the governing rule in this case as it was a meeting "end on, or nearly end on" and each vessel was under an obligation to alter her course to starboard so that each would have been able to pass on the port side of the other.

4. The proximate cause of the collision of the CORSARIO with the hawser connecting the tug PAYARDI and the OILBAR Number 3, and of the subsequent collision of the OILBAR Number 3 with the CORSARIO was the negligence of the CORSARIO in failing to turn from a collision course in time and the incompetency and ignorance of the master, Luis Lyons, of the MV CORSARIO, concerning lights, signals and seamanship.

5. The master of the PAYARDI was the only one of the two masters who took timely and positive precautionary action to avoid the collision, and his action was taken with due regard to good seamanship. He and the mate are competent and efficient mariners and hold proper licenses for the positions they occupied and were performing at the time of the collision.

6. The fact that a red mast light on the barge is not required by the Rules does not signify that such a light cannot be carried on a barge as a means of revealing the nature of the barge's cargo, provided the light does not cause confusion. The showing of the red mast light is not "per se" a violation of Rule 1 (b) and hence not a "statutory violation".

7. The collision and consequent damages were not caused or contributed to by any fault or neglect on the part of the tug PAYARDI and/or barge, OILBAR Number 3, or the master, officers, or crew of the vessels.

8. The collision and consequent damages were caused solely by the fault and neglect of the MV CORSARIO, her owners, operators and those in charge of her navigation.

9. The libel of Ricardo Fotys Caradelis against Refineria Panama, S. A. is dismissed.

10. Ricardo Fotys Caradelis is liable to Refineria Panama, S. A. under the latter's cross-libel, for the damages sustained by the Refineria Panama, S. A., and its costs in this action.