Ricardo Fotys **CARADELIS,** Appellant,

v.

**REFINERIA PANAMA, S. A.,** Appellee.

No. 24010.

United States Court of Appeals
Fifth Circuit.

Aug. 28, 1967.

Rehearing Denied Oct. 4, 1967.

Woodrow deCastro, Balboa, Canal Zone, for appellant.

D. A. Lindquist, New Orleans, La., for appellee.

Before TUTTLE, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Ricardo Fotys Caradelis, owner of the M/V Corsario, appeals from dismissal of his libel against Refineria Panama, S.A., owner of the tug Payardi and the barge Oilbar III, and judgment in favor of Panama on its cross libel. Both claims arose out of a collision between the Carsario and the barge, which was being towed by the Payardi; the Corsario sank while being towed to shore and attempts to raise her have been unsuccessful.

An in personam libel was filed by Caradelis against Panama alleging that the cause of the collision was the negligence of the master of the Payardi and the failure of the Payardi to show proper towing lights. Damages of $105,746.62 were asked for loss of the Corsario, expense of unsuccessful attempts to raise the ship and loss of profits from her operation for one year. Panama answered denying liability and filed a cross libel alleging that the cause of the collision was negligent operation of the Corsario and asking $1,100 for damage to the towing gear of the Payardi and temporary loss of services of the tug and her tow.

After trial, the District Court (on January 31, 1966) entered findings of fact and conclusions of law. 249 F.Supp. 317 (D.Canal Zone, 1966). On February 2, 1966, an order titled "Interlocutory Decree" was entered which dismissed Caradelis' libel and ordered that Panama recover of Caradelis on its cross libel; the cause was continued for determination of

damages. On May 19, 1966, an order titled "Final Decree" was entered directing that Panama recover from Caradelis stipulated damages of $1,083.97 plus interest and costs. Caradelis filed notice of appeal on May 26, 1966.

We are met with an asserted limitation of our jurisdiction. Panama contends that since the February 2 order dismissed Caradelis' libel and decreed that Panama recover on its cross libel, that order, insofar as it related to these issues, was a "final decision" within the meaning of 28 U.S.C.A. § 1291. Since no notice of appeal was filed within the ninety-day period specified by 28 U.S.C.A. § 2107 no appeal from the District Court's determination of liability lies, and our jurisdiction on appeal is limited to a review of the award of damages by the May 16 order.

 But the February 2 decree specifically continued the cause "for further orders relative to the taking of proof for determination of Cross Libellant's damages." It cannot be regarded as a final disposition of the cross libel; only when nothing save ministerial tasks relating to computation of damages remains can a mere determination of liability be construed as a "final decision." Chace v. Vasquez, 11 Wheat. 429, 24 U.S. 429, 6 L.Ed. 511 (1826); McGourkey v. Toledo & Ohio Central Railway Co., 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed.

1079 (1892); Guarantee Co. of North America v. Mechanics' Saving Bank & Trust Co., 173 U.S. 582, 19 S.Ct. 551, 43 L.Ed. 818 (1899).[1] The question presented is whether an order dismissing a libel but not finally disposing of a cross libel may be a "final decision." We conclude that it is not. Fed.R.Civ. P. 54(b) requires that when each party asserts a claim for relief against the other, no appeal may be taken from final disposition of less than all the claims in the absence of action by the district court to authorize such an appeal. The rule is a recognition of the "judicial unit" principle under which no appeal lies until final disposition of all matters within the "judicial unit" constituting an action. Ayres v. Carver, 58 U.S. (17 How.) 591, 15 L.Ed. 179 (1854). See generally 6 Moore, Federal Practice Par. 54.19 (2nd Ed., 1966). This principle is as applicable to admiralty as to other proceedings. Bowker v. United States, 186 U.S. 135, 22 S.Ct. 802, 46 L.Ed. 1090 (1902); France & Canada S.S. Co. v. French Republic, 285 F. 290 (2nd Cir. 1902), cert. denied, 261 U.S. 615, 43 S.Ct. 361, 67 L.Ed. 828 (1923); 4 Benedict, Admiralty § 554 (6th Ed., 1940). Since the cross libel arose out of the same transaction as gave rise to the libel there can be no doubt that the "judicial unit" includes both claims.[2] We conclude, therefore, that until final disposition of Panama's

---

1. The February 2 order was an appealable interlocutory order within the meaning of 28 U.S.C.A. § 1292(a) (3). Arctic Shipping Corp. v. Gulfcoast Transit Co., 333 F.2d 605 (5th Cir., 1964). "We have recognized [28 U.S.C.A. 1292(a) (3)] * * * as having application primarily to situations where a determination of the rights and liabilities of the parties has been engaged in separately from a receiving of evidence on and a resolution of the question of damages." Upper Mississippi Towing Corp. v. West, 338 F.2d 823, 825 (8th Cir., 1964). Although no appeal was taken from the February 2 order within the fifteen days prescribed by 28 U.S.C.A. § 2107, Caradelis lost no rights by failing to take such an appeal. An interlocutory appeal is permissive rather than mandatory, and

an aggrieved party may, at his election, decline to appeal an interlocutory order but appeal from the final determination of the case and at that point raise all questions involved in the case. Gloria S/S Co., Inc. v. Smith, 376 F.2d 46 (5th Cir., 1967).

2. Although none of the Admiralty Rules dealt with cross libels in any detail, case law firmly established that no cross libel would be permitted unless it arose out of the subject matter of the original pleading. United States v. Isthmian Steamship Co., 359 U.S. 314, 79 S.Ct. 857, 3 L.Ed.2d 845 (1959); 2 Benedict, Admiralty § 229 (6th Ed., 1940). Thus admiralty procedure, by avoiding what under civil practice would be permissive counterclaims, tended to restrict each ac-

cross libel no "final decision" of Caradelis' action was made, and we are free to consider Caradelis' challenge to the District Court's determination of liability.

The parties agree that the situation was governed by the International Regulations for Preventing Collisions at Sea, 33 U.S.C.A. § 1051 et seq. Rule 18, 33 U.S.C.A. § 1080, directs that when two power-driven vessels are meeting head-on, so as to involve risk of collision, a "meeting" situation exists and each must alter course to starboard so as to effect a safe port-to-port passing. By its express language the rule is inapplicable to two approaching vessels which, if each maintains its course, will safely pass clear of each other (whether port-to-port or starboard-to-starboard). By night the rule applies only when each vessel is in a position to see both sidelights of the other. If approaching vessels are not meeting head-on or nearly so but their anticipated courses cross so as to involve risk of collision, a "crossing" situation exists,[3] and Rule 19 (33 U.S.C.A. § 1081) requires the vessel which has the other on her starboard (the "burdened" vessel) to keep out of the way of the other; the burdened vessel must take early action to comply with this obligation (Rule 22, 33 U.S.C.A. § 1084), avoid, if possible, crossing in front of the other (Rule 22) and, if necessary, slacken her speed, stop or reverse (Rule 23, 33 U.S.C.A. § 1085). The vessel with the right of way is directed by Rule 21 (33 U.S.C.A. § 1083) to keep her course and speed.

If neither vessel is at fault each must bear its own loss; if the fault of one caused the collision that vessel must bear its own loss and pay for the damage to the other. If both vessels are at fault the total damages are divided equally between them regardless of comparative fault, in effect requiring the less damaged to reimburse the more damaged.[4] After a collision each vessel has the duty to stand by and render such assistance to the other as may be practicable and necessary. 33 U.S.C.A. § 366. Failure of one vessel to do so will, under aggravated circumstances, exonerate the other vessel, if originally at fault, from liability. See Federal Insurance Co. v. S.S. Royalton, 328 F.2d 515 (6th Cir., 1964).

No controversy is raised over these rules; it is their application to sharply disputed facts on which the parties differ. Caradelis urges that we consider the evidence de novo and refind for ourselves the facts necessary to a determination of liability. We cannot agree that we have such power.

In theory an appeal in admiralty historically has been regarded as a trial de

tion to a relatively compact "judicial unit." But under the recent consolidation of admiralty and civil procedure, the more liberal provisions of Fed.R.Civ.P. 13 now apply to admiralty actions. See generally, Colby, Admiralty Unification, 54 Geo.L.J. 1258, 1271–73 (1963).

3. "When the courses on which the vessels will pass are not parallel, but are at an angle with one another and will intersect as the vessels advance, it is often difficult to determine whether the meeting rule or the crossing rule applies." Griffin, Collisions § 28, pp. 62–63 (1940). Griffin concludes that a crossing situation exists if either vessel has the other more than half a point (or 5⅝ degrees) on the bow and notes that if sidelights

are properly screened half a point is the limit at which both sidelights would be displayed to another vessel. Id. at § 28, pp. 66–67. Caradelis' expert testified at trial that it is generally accepted that the courses can be as much as two points (or 22½ degrees) apart.

4. Schooner Catharine v. Dickenson, 17 How. (58 U.S.) 170, 171, 15 L.Ed. 233 (1855); Arctic Shipping Corp. v. Gulfcoast Transit Co., 333 F.2d 605 (5th Cir., 1964); Gilmore and Black, Admiralty § 7–4, p. 402 (1957). For an unsuccessful attempt to divide damages according to comparative fault, see N. M. Paterson & Sons, Lt. v. City of Chicago, 209 F.Supp. 576 (N.D.Ill.1962), rev'd, 324 F.2d 254 (7th Cir., 1963).

novo.[5] In some early cases this was considered to mean that findings of fact made by the district court were not binding on the court of appeals. E.g., Coryell v. Phipps, 128 F.2d 702, 704 (5th Cir., 1942), aff'd, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943). But this circuit as well as the others has now fully accepted the proposition that the "clearly erroneous" standard set out in Fed.R.Civ. P. 52 applies to admiralty actions.[6] We have also consistently recognized that when some or all of the evidence upon which the findings are based was not testimony of "live" witnesses produced before the district court but rather written depositions submitted to the district court, the "clearly erroneous" standard is somewhat modified.[7] As we recently commented in San Pedro Compania Armadoras, S.A. v. Yannacopoulos, 357 F.2d 737, 740 (5th Cir., 1966): "[A]lthough we are bound by the clearly erroneous doctrine * * *, it is subject to the

modification that it does not apply with equal force, where * * * the appellate court is in as good a position as the lower court to evaluate the testimony that is crucial to the case."

In this case the testimony of the masters and mates of both ships, of seamen on the barge and tug and of the owner of the Corsario (acting as supercargo at the time of the collision) was presented to the district court in the form of transcribed testimony taken before the Local Board of Inspectors soon after the collision. The only live evidence produced before the district court was the testimony of two experts who attempted to analyze the transcribed testimony and reconstruct the details of the collision. The case law provides no clear guide to the extent to which the "clearly erroneous" scope of review is modified under these circumstances.[8] We feel that while we may not consider the evidence de novo and must give considerable

5. Irvine v. The Hesper, 122 U.S. 256, 7 S.Ct. 1177, 30 L.Ed. 1175 (1887); Reid v. Fargo, 241 U.S. 544, 36 S.Ct. 712, 60 L.Ed. 1156 (1916). But note that the 1966 unification of civil and admiralty procedures apparently eliminated the seldom-used provision of former Admiralty Rule 45 for taking additional proof by the appellate courts.

6. China Union Lines, Ltd. v. A. O. Andersen & Co., 364 F.2d 769, 789 (5th Cir., 1966); Commerce Oil Corp. v. Dixie Carriers, Inc., 252 F.2d 386 (5th Cir., 1958); Fidelity-Phenix Fire Ins. Co. of New York v. Flota Mercante Del Estado, 205 F.2d 886 (5th Cir.), cert. denied, 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411 (1953). This result is clearly required by McAllister v. United States, 348 U.S. 19, 99 L.Ed. 20, 75 S.Ct. 6 (1954). But, as Judge Brown noted in Oil Screw Noah's Ark v. Bentley & Felton Corp., 322 F.2d 3, 5–6 (5th Cir., 1963), "such * * * review affords a greater latitude than would an appeal from a jury verdict. In the latter it is a question of substantial evidence. In the former, there is still the qualitative factor of the truth and right of the case—the impression that a fundamentally wrong resut has been reached."

7. Waterman S.S. Corp. v. United States Smelting, Refining & Mining Co., 155 F.2d 687 (5th Cir.), cert. denied, 329 U.S.

761, 67 S.Ct. 115, 91 L.Ed. 656 (1946); Coyle Lines v. United States, 195 F.2d 737 (5th Cir., 1952); C. J. Dick Towing Co. v. The Leo, 202 F.2d 850 (5th Cir., 1953); San Pedro Compania Armadoras, S.A. v. Yannacopoulos, 357 F.2d 737 (5th Cir., 1966). See also Mobil Tankers Co., S.A. v. Mene Grande Oil Co., 363 F.2d 611 (3rd Cir.), cert. denied, 385 U.S. 945, 87 S.Ct. 318, 17 L.Ed.2d 225 (1966); Spanos v. The Lily, 261 F.2d 214 (4th Cir., 1958); Kulukundis v. Strand, 202 F. 2d 708 (9th Cir., 1953); Bertel v. Panama Transport Co., 202 F.2d 247 (2nd Cir.), cert. denied, 346 U.S. 834, 74 S.Ct. 35, 98 L.Ed. 356 (1953).

8. In *San Pedro Compania Armadoras, S.A.,* supra, we observed that where the only evidence supporting a finding of ·contributory negligence was response to written interrogatories, the clearly erroneous rule "does not apply wih equal force." In Kulukundis v. Strand, supra, the Ninth Circuit held that where the testimony of one of several witnesses was by deposition, the clearly erroneous rule "is subject to modification in the discretion of the appellate court." And in Spanos v. The Lily, supra, the Fourth Circuit stated that where most of the evidence was in the form of depositions, the clearly erroneous principle "applies with less force."

weight to the findings of the district court, we may reexamine the evidence more closely than if the clearly erroneous rule was fully applicable, and this we have done.

The record reveals the following undisputed facts: About 2:35 a. m. on November 1, 1963, the Corsario, a 95-foot cargo vessel, left the Colon docks. At 2:55 she cleared the Cristobal breakwater. At 3:02 a. m. the Payardi, with the barge in tow, left the dock at San Minas Bay bound for Balboa, Canal Zone. The Payardi proceeded two miles out and (at 3:35 a. m. according to her log) turned to a 250 degree course. The Corsario, after proceeding about one and one-half miles past the breakwater, turned to an East-Northeast course. The collision occurred at about 4:00 a. m. as the Payardi approached the entrance to the Cristobal breakwater.

It is also undisputed that the vessels sighted each other before the collision and that the Payardi changed her course 50 degrees to starboard (although the time of this turn is sharply disputed). It is equally clear that the Corsario did not alter her course until she was almost upon the Payardi, at which time she cut her engines and turned sharply to starboard. Although she cleared the Payardi, the Corsario struck the 300 foot hawser with which the barge was being towed; before she could disengage herself the Corsario was struck by the barge. The record also establishes that despite the lights on the Payardi's mast the Corsario did not realize that the tug had a tow until the Corsario was almost upon the tug and the barge.[9]

The evidence is conflicting whether the Payardi immediately offered full assistance to the Corsario. In any event, after anchoring the barge the Payardi took the Corsario under tow in an attempt to take her into the Colon harbor, but the Corsario sank before it was possible to beach her.

The Payardi's version of the collision, which was generally accepted by the district court, placed the two vessels on a meeting course, each showing the other a red light (indicating a port-to-port). At 3:40 a. m. the Payardi made her 50 degree turn to starboard after giving the proper signal, a single blast on the whistle. At 3:50, noting that the Corsario had not altered her course, the Payardi gave the danger signal, four short blasts on the whistle. This was ignored by the Corsario, which did not alter course until almost upon the Payardi.

On appeal Caradelis offers a much different version: The vessels approached on parallel (or nearly so) courses not port-to-port but rather starboard-to-starboard. The Corsario correctly assumed that if each held her course the ships would safely pass starboard-to-starboard. Immediately before this safe passing would have occurred (i. e., later than the 3:40 a. m. reported by the Payardi) the Payardi made her sharp swing to starboard, taking her directly into the path of the Corsario, which swerved to starboard in an unsuccessful attempt to avoid the collision.

Caradelis has demonstrated several problems with the district court's findings. For example, expert testimony produced at trial strongly suggested that if the Payardi's course was exactly as her master described she would not have been at the location of the collision at 4:00 a. m. Moreover the diagram agreed by both masters to be generally accurate suggests that the Corsario's course gradually curved to port; there is no support for this in the testimony.

---

**9.** The Payardi carried three white lights in a vertical line on her mast. Under Rule 3 (33 U.S.C.A. § 1063), this indicated that the length of the tow exceeded 600 feet; had the Payardi been in compliance with the rule, she would have carried only two vertical white lights. But this in no way contributed to the collision. The master of the Corsario testified he did not realize the Payardi had *any* tow until after he had narrowly missed her stern; the situation would have been no different had the Payardi carried two lights instead of three.

But Caradelis' version is contrary to practically all the testimony developed at the hearing before the Board of Inspectors. While there are several ambiguous statements which might permit the inference of a starboard-to-starboard approach, these are far outweighed by the testimony from those aboard both vessels that during the approach each saw only the red light of the other. Caradelis relies upon certain expert testimony as establishing that a starboard-to-starboard approach best reconciles the conflicting and confused evidence. But the expert's reconstruction of the collision courses was admittedly imprecise—reliance had to be placed on the Corsario's master's recollection of his course (since no written record was kept), and certain assumptions regarding his method of taking bearings had to be made. At trial the expert himself admitted that his diagram was not intended to show the nature of the approach, i. e., port-to-port or starboard-to-starboard.

 On the record presented here it is impossible to reconstruct the details of the collision with any degree of confidence. But we agree with the district court in rejecting Caradelis' contention that the original approach was such that if both vessels had held course a safe starboard-to-starboard passage would have been effected. It is unnecessary to speculate as to all further details since under either conceivable set of facts the Corsario had an affirmative duty to take steps to avoid the collision. If the approach was a meeting situation, we agree that the manuever to starboard by Payardi was timely, but Corsario also had an obligation to turn to starboard. If the approach was a crossing situation, Corsario was the burdened vessel, with all the obligations this status carries. The Corsario failed to do anything which would meet either of these duties but instead maintained her course and speed until it was too late for corrective action. We also agree that there was no failure to render assistance on the part of the Payardi as would relieve the Corsario from liability.

We feel the district court did as well as it could given the evidence submitted to it. As we recently said in Compania Anonima Venezolano de Navegacion v. Matthews, 371 F.2d 971, 973 (5th Cir., 1967): "The nature and degree of exactness of the findings [required] depend on the circumstances of the particular case. We think the findings here are ample to provide a basis for the decision." Therefore, we

Affirm.

## ORDER ON
## PETITION FOR REHEARING

PER CURIAM:

In application for rehearing appellant makes the point that there is a possible inconsistency in the findings of the district court that the two vessels were in a meeting situation or collision course, but that each was showing the other a red light, since Rule 18 (33 U.S.C.A. 1080) of the International Regulations for Preventing Collisions at Sea is limited in its application by night to cases in which each vessel is in such a position as to see both the sidelights of the other.[1]

The trial court rejected appellant's contention that the original approach was starboard-to-starboard. The difficulties of making a wholly consistent reconstruction of the accident did not require that the trial court accept appellant's version of the facts.

Other points made by appellant in its application for rehearing already have been covered in the corrected opinion.

The application is denied.

---

1. See note 3 to our opinion pointing out the difficulties of determining whether the meeting rule or the crossing rule applies.