**Cecil M. CONNALLY, Donald W. Eagle, Carl R. Bishop, Jerry C. Bell, and Jerry M. Davis, Plaintiffs-Appellants,**

v.

**TRANSCON LINES, a California Corporation, and Dallas General Drivers, Warehousemen and Helpers, Teamsters Local Union No. 745, a Labor Organization, Defendants-Appellees.**

No. 77–3423
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 3, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Kagay, Turner, Eyres & Robertson, James J. Robertson, Dallas, Tex., for plaintiffs-appellants.

Vial, Hamilton, Koch, Tubb, Knox & Stradley, James H. Baumgartner, Jr., Dallas, Tex., for Transcon.

Roseborough & Curlee, Larry C. Roseborough, Dallas, Tex., for Henry, Rich, Hawthorne, Dallas General, Warehousemen.

Mullinax, Wells, Mauzy & Baab, Dallas, Tex., for Southern Conf. of Teamsters.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

JOHN R. BROWN, Chief Judge:

Plaintiffs, white male over-the-road drivers for Transcon Lines and members of Teamsters Local 745, appeal from the judgment of the District Court entered against them in this suit for damages and injunctive relief under § 301 of the National Labor Relations Act, 29 U.S.C.A. § 185 (1970). Plaintiffs claim that defendant Transcon Lines breached its collective bargaining contracts with Local 745 by measuring their seniority for purposes of bid, layoff, and recall from the effective date of their transfer to the over-the-road unit, instead of from their initial date of hire. They also claim that defendant Local 745 violated its duty of fair representation by acquiescing in Transcon's violation of the contract and by failing to accord them fair representation in grievance proceedings in which they sought to obtain full seniority. We affirm the District Court's judgment in favor of the defendants.

Each of the plaintiffs was initially employed with Transcon as a city driver. Under the collective bargaining agreements, over-the-road and city drivers compose separate bargaining units, though they are represented by the same union. Each plaintiff had requested transfer to a position as an over-the-road driver prior to August of 1971, but Transcon had no procedure for allowing an individual to transfer at the time of their initial applications. In August of 1971, however, Transcon announced a procedure whereby a transfer could be made upon the execution of a "Request for Transfer Form." Paragraph 4 of that form provided:

> Qualified employees determined eligible for transfer will retain full company seniority for all purposes except bid, layoff, and recall. Seniority for bid or layoff purposes will be calculated from the first trip pulled as a line driver. The Company will waive the probationary period and transfer to the road will be considered permanent and final on the effective date of transfer with all seniority rights and obligations in the former bargaining unit terminated.

Each of the plaintiffs subsequently requested transfer and signed the "Request for Transfer Form."[1]

1. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396, the Supreme Court held that a seniority system similar to the one involved

Between October 1971 and October 1973, each of the plaintiffs filed either individual or joint grievances requesting a change in seniority dates. These grievances asserted that under the 1970–73 collective bargaining agreement between Transcon and the Union, seniority for all purposes should be measured from the date of hire as city drivers, or, alternatively, from the date of the initial request for a transfer to the over-the-road unit. The grievances were denied.

In 1973, Transcon and the Southern Conference of Teamsters entered into a new over-the-road collective bargaining contract for 1973–76. In November 1973, pursuant to provisions of that contract, the over-the-road drivers of Teamster Locals 523, 745, and 886 who were Transcon employees voted on whether to retain "terminal seniority" or to implement a "Modified Systems Seniority Plan." The difference between the two systems is that under the modified plan, an employee's seniority is not confined strictly to his home terminal—if he is laid off at his home terminal, he can move to another terminal covered by the agreement and retain his seniority. The modified plan passed, and a new seniority list was posted that set forth the seniority dates of all affected Transcon employees, including the plaintiffs.

Following the posting of the new seniority roster, several of the present plaintiffs filed new grievances in which they again sought full seniority. The grievances were denied. A charge was then filed with the National Labor Relations Board. On April 30, 1974, the Regional Director refused to issue a complaint, on the ground that the evidence was insufficient to establish a violation of the National Labor Relations Act.

In January of 1975, each of the plaintiffs filed identical grievances requesting full company seniority for all purposes, including bid, layoff, and recall. These grievances were consolidated, and, in February, the Multi-State Grievance Committee of the Southern Conference referred them to the next-scheduled Area Committee meeting. That committee referred the grievances back to the Multi-State Committee. In June, the Multi-State Committee denied the grievances after hearings in which the plaintiffs, Local 745, and Transcon participated.

Shortly thereafter, the plaintiffs instituted this suit in the Northern District of Texas. After the District Judge had heard part of the plaintiffs' evidence and had reviewed the extensive pre-trial order, he suggested that a more expeditious disposition could be reached by the closing of testimony and submission of the case on the stipulations of fact, the limited trial testimony, and written briefs. The parties agreed.

The District Court gave judgment for the defendants. On this appeal, the plaintiffs contend that the 1970–73 collective bargaining contracts and the Modified Seniority Systems Plan entitled them to full seniority for all purposes.[2] The claim on the contracts is grounded on Article 5, § 1 and Article 42, § 1 of both the over-the-road and city driver agreements. These provisions are substantially the same in both agreements and state that seniority "shall only be broken by discharge, voluntary quit, or

---

here—one which requires city drivers to forfeit competitive seniority when transferring to over-the-road jobs—was a "bona fide" seniority system under § 703(h) of Title VII, 42 U.S. C.A. § 2000e–2(h) (1970). The plaintiffs in this case do not raise any Title VII issues.

2. The plaintiffs hint an alternative argument that if the contract and Modified Systems Plan, properly construed, deny them full seniority, then the Union breached its duty of fair representation in negotiating the contracts. This claim, however, is foreclosed by such cases as *Ford Motor Company v. Huffman*, 1953, 345

U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048; and *Humphrey v. Moore*, 1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, which recognize the power of a union to exercise its discretion in contract negotiations to draw reasonable distinctions among groups of employees. The Supreme Court in *Teamsters, supra*, 431 U.S. at 356, 97 S.Ct. at 1865, stated: "The placing of line drivers in a separate bargaining unit from other employees is rational, in accord with industry practice, and consistent with National Labor Relations Board precedents."

more than a three (3) year layoff."[3] The claim based on the passage of the Modified Systems Seniority Plan relies on language in the plan which states that "drivers will use company seniority for all purposes at home terminal." However, we need not reach the merits of the plaintiff's contractual claims, for these claims have been presented and rejected in some eighteen separate grievance proceedings.

Article 5, § 6 of the 1970–73 collective bargaining agreements for both the over-the-road and city driver units requires that employee seniority disputes be submitted to a grievance committee,[4] and § 7 provides that "the seniority decisions of [grievance] committees . . . shall be final and binding."[5] Later agreements contain the same provisions.

Under these provisions and relevant case law, the decisions of the various grievance committees on the plaintiff's breach of contract claims are final and binding on them absent a breach by the Union of its duty of fair representation. See Hines v. Anchor Motor Freight, 1976, 424 U.S. 554, 567–72, 96 S.Ct. 1048, 47 L.Ed.2d 231; Humphrey v. Moore, 1964, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370; Lomax v. Armstrong Cork Company, 5 Cir., 1970, 433 F.2d 1277. Haynes v. United States Pipe & Foundry, 5 Cir., 1966, 362 F.2d 414. As was stated in Hines, supra, 424 U.S. at 570–71, 96 S.Ct. at 1059:

> To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union.

The District Court held that the plaintiffs failed to show a breach of the duty of fair representation by the Union, finding that "while . . . at times the Union's attitude toward its representative duties was less than enthusiastic," plaintiffs' proof did not establish by a preponderance of the evidence that the Union's conduct toward them was arbitrary, discriminatory, or in bad faith.

The District Court applied the proper legal standard to the facts of the case. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Although the question of whether the Union's conduct toward the plaintiffs was arbitrary, discriminatory, or in bad faith presents a mixed question of fact and law, the predominance of factual issues leads us to conclude that the District Court's findings on this score "come here well-armed with the buckler and shield"[6] of F.R.Civ.P. 52(a). See Backar v. Western States Producing Co., 5 Cir., 1977, 547 F.2d 876, 884. The "clearly erroneous" standard of that rule, of course, is somewhat modified where there is little or no "live" testimony in the trial court. See Caradelis v. Refineria Panama, S.A., 5 Cir., 1967, 384 F.2d 589, 593–94. In such cases, however, if the conclusions of the trial judge may reasonably be inferred from the record, such conclusions will not be disturbed on appeal. This is true even if conflicting inferences of equal reasonableness may be drawn from review of the same body of evidence. See Skidmore v. Grueninger, 5 Cir., 1975, 506 F.2d 716, 723–24.

Applying this standard of review to the facts of this case, we believe that the District Court's findings are adequately sup-

---

**3.** They also claim that the Request for Transfer Form violates Article 6, § 2 of the bargaining agreements. That section provides that an employer shall not enter into any agreement or contract with his employees that in any way conflicts with the terms and conditions of the collective bargaining agreement.

**4.** See also Art. 42, § 1:
Controversies regarding seniority rights shall be settled by the Employer and the Union. Failing a settlement agreement by these parties, the controversy shall be proc-

essed under the Grievance Procedure set out in Articles 43 and 44 of this Agreement.

**5.** See also Art. 44, § 1:
Where a state or multiple state [grievance] committee, by a majority vote, settles a dispute, no appeal may be taken to the Southern Conference Area Grievance Committee. Such decision will be final and binding on both parties.

**6.** Horton v. United States Steel Corp., 5 Cir., 1961, 286 F.2d 710, 713.

ported by the record. Like the District Court, we recognize that at times the Union's representation of these plaintiffs was not perfect. The plaintiffs point to several specific instances of Union misconduct, most of which concern the Union's role in the 1975 grievance proceedings, which they contend clearly demonstrate the Union's bad faith. For example, the Multi-State Committee's refusal to receive briefs prepared by the plaintiffs' attorney, the plaintiffs claim, was due to the Union's failure to apprise them of the procedural rules governing grievance proceedings. But these allegations of Union conduct that the plaintiffs find less than acceptable, when considered in light of the entire record, are insufficient in both substance and effect to show a breach of the duty of fair representation. At most, they prove that the Union may have been somewhat negligent in its handling of the grievances. Even if negligent conduct may under some circumstances breach the duty of fair representation,[7] the Union's presentation here was not so poor as to deprive the plaintiffs of a fair hearing. *See Hensley v. United Transports, Inc.*, N.D.Tex., 1972, 346 F.Supp. 1108, 1115:

> The Union saw to it that the facts (which were relatively simple in nature) were presented on plaintiff's behalf before each and every one of the hearing panels and committees . . . . [The Union's] repeated efforts on plaintiff's behalf constitute compelling evidence of good faith and lack of perfunctory treatment.

*See also* Clark, The Duty of Fair Representation, 51 Tex.L.Rev. 1119, 1170–73 (1973).

The District Court's finding that the Union did not act arbitrarily, discriminatorily, or in bad faith may reasonably be inferred from the record.

AFFIRMED.

---

**7.** *Compare Bazarte v. United Transp. Union*, 3 Cir., 1970, 429 F.2d 868, *with Holodnak v. Avco-Lycoming Div.*, D.Conn., 1974, 381 F.Supp. 191, *modified on other grounds*, 2 Cir., 1975, 514 F.2d 285.